WINIFRED L. ALLEN, executrix, *vs.* GARABED N.
MOUSHEGIAN.

Middlesex.    October 8, 1946. — February 3, 1947.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Probate Court*, Jurisdiction, Petition, Decree. *Attorney at Law. Executor
and Administrator*, Attorney. *Equity Jurisdiction*, Accounting. *Fidu-
ciary. Release.*

A Probate Court had jurisdiction of a proceeding by an executrix against
   an attorney at law, who had acted for her in the settlement of the
decedent's estate, for an accounting of assets thereof which had come
into the possession of the attorney.

Recovery of the proceeds of specific property of the estate of a decedent
in the possession of the respondent and sold by him was within the
scope of a petition by the executrix in a Probate Court for an account-
ing, for recovery of such property, and for general relief.

A judge of a Probate Court has authority to correct a decree already
entered by him where through mistake it did not conform to the
decision actually made by him.

A conclusion of breach by an attorney of obligations owed by him to an
executrix arising out of the fiduciary relation of attorney and client
was required by the facts that she did not have the mentality to
understand properly her relation with the attorney and acted without
the benefit of independent legal advice, that she originally had retained
   the attorney to "secure" her individual "interest" in the estate of her
father, then living, for a stipulated compensation of twenty-five per
cent of the "recovery," that the services he actually performed were
principally for her as executrix in the settlement of the father's estate
and were merely the ordinary services customary in such settlements,
   but that nevertheless he attempted to retain as his compensation for
such services twenty-five per cent of the assets of the estate which
was "vastly more" than the "fair value" of such services; and the
attorney properly was required to account to the executrix for the
assets so retained, without allowance for his services.

A general release, obtained by an attorney from his client without the
   client's having the benefit of independent legal advice and for the
purpose of strengthening the attorney's position in case he should
have to meet a claim by the client for breach of his duty to the client,
was no defence to such a claim.

PETITION, filed in the Probate Court for the county of
Middlesex on October 5, 1943.

The case was heard by *Poland*, J.

*R. B. Walsh*, for the respondent.

*A. D. Hill*, (*B. L. Armstrong* with him,) for the petitioner.

DOLAN, J.   This petition in equity is brought by the petitioner as executrix of the will of her father, George L. Lawson, to recover from the respondent certain assets of the estate which came into the possession of the respondent in the course of his employment as attorney for her in her representative capacity as executrix as aforesaid.   In addition to praying for an accounting, the petitioner also prayed that the respondent be ordered to return to her certain shares of stock specifically described in the petition, together with other personal property comprising a part of the estate of the testator, and for general relief.   After hearing, the judge on March 13, 1944, entered a decree ordering the respondent to turn over to the petitioner the stock of certain corporations, described in the petition, and to pay to the petitioner the sum of $1,957.   The respondent appealed from that decree.   On June 29, 1945, the judge filed a report of material facts, which appears on its face to be a comprehensive report of all the material facts upon which he based the decree previously entered by him.   See *Birnbaum* v. *Pamoukis*, 301 Mass. 559.   In this report the judge stated that there was a mistake in phrasing the decree already entered by him, that he found in fact that the respondent had received $6,117.73 which he claimed under his contract, that is, "the power of attorney of January 23, 1937," and that that sum was made up of proceeds of the sales of fifteen shares of stock of the American Telephone and Telegraph Company and shares of stock of the Texas Gulf Sulphur Company, "a total of $4,160.73, and $1,957 received in cash [by the respondent] at different times and not accounted for except in the respondent's claim for compensation." Continuing, the judge stated that it was his intention to charge the respondent with the proceeds of the sale of those stocks plus the balance of cash received by him, but that by inadvertence the decree entered ordered the respondent to return the shares of corporate stock in specie.   For the pur-

pose of correcting the mistake in phrasing the decree first entered and to make effective the real purpose of the judge, he entered a new decree on June 29, 1945, vacating the first decree (of March 13, 1944) and charging the respondent with the amount received by him as proceeds of the sales of the shares of stock in question, $4,160.73, and the balance of cash received by him from other sources, namely, $1,957, the total being $6,117.73, and ordering the respondent to pay that sum to the petitioner. The respondent appealed also from that decree.

The evidence is reported. Material facts found by the judge and those we find ourselves may be summed up as follows: The petitioner is a married woman past middle age. The respondent, who was admitted to the bar in 1924, practises law in Lowell. Early in the year 1937 the petitioner, who knew that her father possessed interests in real and personal property, the amount of which she did not know, became concerned about her prospects of eventually receiving it. She believed "correctly" that her brother had received the larger part of her mother's estate and was apprehensive as to what might become of her father's estate after his death. Her anxiety was unnecessary but not unreasonable. In this state of mind she consulted the respondent on January 22, 1937. A friend had recommended him to her. He is a lawyer of about twenty years' experience. She told him of her fears and that she had no present financial means. He then drafted a power of attorney which in final form provided that his compensation should be twenty-five per cent of the amount that should be "recovered." [1] In its original form that provision was not set forth. This power of attorney was signed by the petitioner on the next day, January 23, 1937. She had not taken ad-

---

[1] The power of attorney, so far as here material, is as follows: "Know all men by these presents that I, the undersigned, Winifred L. Allen of Edgewood, State of Rhode Island, hereby constitute and appoint Garabed N. Moushegian, attorney at law of Lowell, Massachusetts, my true and lawful attorney, for me and in my name and stead, to ask, demand, levy, require, recover and receive of and from all and every person and persons whomsoever the same shall or may concern, all and singular the sum and sums of money, debts, goods, wares, and merchandise, effects and things whatsoever, and wheresoever they shall and may be found .due, owing, payable, belonging, and coming unto me, by any ways and means whatsoever, and especially to demand,

vice from any person other than the respondent concerning the signing of the power, and the respondent did not suggest to her that she should get other advice. The petitioner had had no previous contact with lawyers or law business, except on one occasion in connection with an automobile accident. Her only experience in business was in selling articles of women's clothing and small wares from house to house in an attempt to increase her slender income. In her dealings with the respondent, from first to last, she did not have enough mental equipment or experience to understand or to appraise the situation that was created between her and the respondent. The judge did not credit the testimony of the respondent that he stated to the petitioner "as a part of her contract that if there should be no recovery, she would nevertheless owe him the value of his services." Sometime after January 23, 1937, the respondent examined the Probate Court records concerning the settlement of the petitioner's mother's estate and found that her estate had been settled some years before. Later, after a conference with the petitioner and her father, the respondent was appointed conservator of her father's property on November 20, 1940. Her father died on December 5, 1940. The conservatorship was therefore in force for less than one month. The respondent, who had had possession of the property of his ward, settled his account as conservator on February 14, 1941, in the Probate Court, and was allowed $500 for his services as conservator. The petitioner's father died testate, as before stated, on December 5, 1940. His will was executed in 1934, and, after money legacies amounting to a little over $1,000, he bequeathed the residue of his estate to the petitioner. His will was allowed without opposition on January 2, 1941. There was no reason why the respondent should have made any elaborate preparations in support of the will. The petitioner, as an executrix residing outside the Commonwealth, appointed the respondent

accept, procure, protect and secure any and all interest I now have, or shall and may have in my father's, George L. Lawson, estate, by virtue of gift, bequest and devise under any written instrument or will or testament of my said father, or as his heir at law in case of his decease, intestate. The rate of compensation, twenty-five per cent, of recovery."

her agent. See G. L. (Ter. Ed.) c. 195, § 8, as amended by St. 1933, c. 221, § 2. The respondent, as former conservator of the property of the testator, transferred to the petitioner, as executrix, the property of the testator of which he had had possession in his name as conservator. He continued, however, to keep actual possession thereof. The inventory of the estate of the testator shows "personal estate $23,400.95, real estate $5,950." Between February and June, 1941, the respondent furnished various sums to the petitioner to pay legacies and $485 which was used by her to purchase an automobile. In March and April, 1941, the respondent divided parts of the estate of the testator between himself and the petitioner, giving her seventy-five per cent and keeping twenty-five per cent for himself. As part of this process, the petitioner, who had come into possession of forty shares of stock of the Pullman Company, paid the respondent $275, which was twenty-five per cent of its inventory value. A certificate for forty shares of stock of the American Can Company was transferred by the respondent as conservator of her father's property to the petitioner as executrix, and then changed into two certificates, one for ten shares and the other for thirty shares, both in the name of the petitioner as executrix. The same course was followed with certificates for one hundred shares of stock of the Texas Gulf Sulphur Company, and sixty shares of stock of the American Telephone and Telegraph Company. The new certificates of these three stocks to the extent of twenty-five per cent of the original certificates were sold and the broker's checks for the proceeds, $4,160.73, the net proceeds of the sales, were indorsed by the petitioner in blank and given to the respondent, who retained them as part of the twenty-five per cent compensation fixed in the contract before mentioned. The respondent also received $1,200, the proceeds of the sale of real estate devised to the petitioner by her father's will. He kept the proceeds of that sale, taking $300 of it on account of his twenty-five per cent and crediting $900 "of it to the petitioner as an individual," but he did not produce any book account of his dealings with the petitioner. When he closed his bank account as conservator

there was a balance of $300 of which he gave the petitioner $225, retaining for himself $75. He also took from savings bank deposits in his possession as conservator certain sums advanced by him for the payment of debts and legacies, plus twenty-five per cent of the balance, paying to the petitioner seventy-five per cent of that balance. On June 27, 1941, the respondent had possession of the petitioner's stock certificates, representing seventy-five per cent of the original holdings of the testator at his death, which she had indorsed, as executrix, in blank. The petitioner also executed and left with the respondent two blank deeds of real estate devised to her by her father, to be filled out by the respondent and delivered if he should arrange for sales of the real estate. A release of all demands, dated February 21, 1941, seven days after the respondent's account as conservator had been allowed, had been signed by the petitioner. Although put in evidence by him in defence of the present suit, that release was intended merely to release him as conservator. His dealings with the estate of the testator took place after the execution and delivery of that release. Another release of all demands that the petitioner then had or ever had against the respondent on account of the estate of her father, dated June 27, 1941, was signed by the petitioner. "It is on the probate office form [1] entitled 'Release of all demands.' " The blank spaces in the form of release that were filled in by the petitioner in her handwriting except the words and figures "two thousand fifty-three 72/100" and the date were written in by the respondent after the petitioner had completed her writing thereon. The petitioner had no memory about this document. The respondent caused her to fill in the form in her handwriting for the purpose of fortifying his position should he have to meet a claim by her that "his taking twenty-five per cent of the estate was unjustifiable." The petitioner signed this release only because of her trust in the respondent. She was unstable emotionally and incapable of appreciating her situa-

---

[1] It does not appear from an examination of our records that any such form has ever been approved by the judges of probate and submitted to this court as required by G. L. (Ter. Ed.) c. 215, § 30.

tion with the respondent, and her deficiency in mental balance was apparent to him. He never suggested to her that she should have independent advice, and she had no advice from anyone except the respondent until shortly before she discharged him. Moreover, when the second release was signed on June 27, 1941, the respondent still had possession, in a safe deposit box, of all the property of the petitioner as executrix, and he retained it until it was "extracted" from him on September 19, 1941, by another attorney representing the petitioner. The twenty-five per cent of the estate taken by the respondent was "vastly more" than the fair value of the services rendered by him. The judge further found as follows: "The dealings of the respondent with moneys of the estate, apart from the proceeds of shares of stock sold, are confused and the net result cannot be stated accurately as he presented no detailed account of his handling of moneys of the estate. . . . On all the evidence the court finds that he received a total of $6,117.73 which he claims as his compensation under his contract, *i.e.* the power of attorney of January 23, 1937, containing the twenty-five per cent clause. This sum is made up of proceeds of the sales of fifteen shares American Tel. and Tel. Company [and] shares of stock of the Texas Gulf Sulphur Company, a total of $4,160.73, and $1,957 received in cash at different times and not accounted for except in the respondent's claim for compensation." The findings of the judge concerning the error in the decree entered by him prior to the filing of his report of facts and the contents of the decree entered by him to correct that error have already been recited.

The evidence being reported, it is our duty under the familiar rule to examine it and to decide the case according to our own judgment, giving due weight to the findings of the judge, which will not be reversed unless they are plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 83–84. *Moroni* v. *Brawders*, 317 Mass. 48, 56, and cases cited. We have examined the evidence accordingly, and are of opinion that it supports the findings of the judge. Hence they cannot be said to be plainly wrong and therefore will not be reversed. The respondent, however, makes

the following contentions: "1. The case, on the facts established, is not within the jurisdiction of the Probate Court. 2. The case stated in the bill is not established by the facts. There has been no amendment and the first decree is not supported by the facts. 3. The second decree is not a mere correction of the first, but a new decree, and beyond the power of the court. 4. The judge of probate decided the case on an erroneous and mistaken theory of law, and one not open on the pleadings and facts. 5. Plaintiff has released the defendant from all obligation."

The Probate Court had jurisdiction of the present petition, G. L. (Ter. Ed.) c. 215, § 6, as appearing in St. 1937, c. 257, as amended by St. 1939, c. 194, § 2, as one "relative to the administration of the . . . [estate] of [a] deceased . . . [person]," as well as one concerning a trust implied in law from the fiduciary relationship arising from that of attorney and client also having to do with the settlement of the estate of a deceased person. We do not adopt the argument of the respondent to the effect that, because the power of attorney in question was signed by the petitioner in her individual name, the relationship between the parties was a purely contractual one concerning which the Probate Court had no jurisdiction. A reading of the power of attorney in the light of the terms of the release dated June 27, 1941, which the respondent procured the petitioner to sign, demonstrates that the services for which the respondent retained the sums here sought to be recovered from him were understood by the respondent and the petitioner to be for services, as set forth in that release, "on account of the estate" of her father. The evidence and the findings of the judge supported by the evidence disclose that all that the respondent did after the appointment of the petitioner as executrix of her father's estate was done in connection with the administration of that estate, all the assets of which the respondent from time to time took possession of, and that all of the money found by the judge to have been retained by him consisted of the proceeds of assets of that estate. The conclusion is inescapable that the respondent throughout the administration of the estate was acting solely

in those matters for the petitioner in her representative capacity, and not for her as an individual, as now asserted by him. The legal custody of the assets of the estate of which the petitioner is executrix was lodged in her. She entrusted them to him in her capacity as executrix in order that he might assist her in the administration. She could not delegate to him her duties as executrix, and the evidence would warrant a finding that the respondent in effect took over without warrant in law the administration of the estate himself. It is in her capacity as executrix that the petitioner brings this proceeding. The first contention of the respondent is governed by such cases as *Mitchell* v. *Weaver,* 242 Mass. 331, 337, *Buzzell* v. *Schulz,* 273 Mass. 372, and *Walsh* v. *Mullen,* 314 Mass. 241. See also *Hinckley* v. *Barnstable,* 311 Mass. 600, 606. The present case is distinguishable from *Geen* v. *Old Colony Trust Co.* 294 Mass. 601, and *Potter* v. *Mullaney,* 301 Mass. 497, relied on by the respondent. A reading of those cases will suffice to demonstrate the obvious distinctions between them and the present case. There is nothing in *Mitchell* v. *Weaver,* 242 Mass. 331, to the contrary. The fact that in that case it was not money that was sought to be recovered but certificates of ownership of corporate stocks or savings bank books of deposit and such like is of no importance. That the jurisdiction in equity conferred upon the Probate Court by c. 215, § 6, as amended, extends as well to the recovery of money itself is settled. In *Coffey* v. *Rady,* 267 Mass. 301, the petition was brought under G. L. c. 215, § 6, by an executrix for the recovery from her attorney of money, given to him by her for the payment of legacies, which he retained to his own use, and it was held that the subject matter of the suit was one relative to the administration of the estate of a deceased person under G. L. c. 215, § 6. The same result was reached in *Buzzell* v. *Schulz,* 273 Mass. 372, 375, where the assets of the estate sought to be recovered consisted of money. What we have said above disposes of the respondent's first contention.

The second contention of the respondent is that the case stated in the petition is not established "by the facts" be-

cause there "has been no amendment and the first decree is not supported by the facts." This contention is based on the fact that by the petition it was specific shares of corporate stock, before referred to, of which recovery was sought and which by the first decree entered by the judge the respondent was ordered to turn over to the petitioner, whereas the evidence disclosed that the stock in question had been sold by the respondent before the petition was brought. Without regard to whether shares of stock or proceeds of the sale thereof were actually involved, the court below had jurisdiction of the subject matter of the petition; and we think that the recovery of the proceeds was within the scope of the pleadings, and that it was within the authority of the judge to deal with the matter in the later decree entered by him in the light of the situation disclosed by the evidence after a fair hearing. *Otis* v. *Otis*, 167 Mass. 245, 247.

The third contention of the respondent is that the judge was without authority to enter the decree vacating the first decree entered by him as having been entered by mistake and as not expressing his intent, and finding that the respondent was indebted to the petitioner in the sum of $6,117.73 and ordering him to pay that sum to the petitioner. The case, however, is not one where in fact the first decree was the decree that the judge intended to enter. It is settled that the judge had authority to correct the first decree entered by him as not conforming to the decision actually made by him. " 'There is an inherent and necessary power in a court of justice acting on the motion of an interested party, at the suggestion of one not a party, or on its own motion to correct errors and remedy omissions in its records in order that they shall speak the truth.' *Webb* v. *Cohen*, 280 Mass. 292, 293, and cases cited. This is a plenary power." *Chagnon* v. *Chagnon*, 300 Mass. 309, 311. As in the *Chagnon* case, so here, that which purported by the first decree of the judge to have been done by him was not intended by him to be done. Apart from this principle, the evidence being reported, even had the judge not corrected the first decree entered by him, we would have au-

thority to order the entry of the proper final decree on the evidence. We do not adopt the contention of the respondent as to this subject matter.

The fourth contention of the respondent that the judge decided the case upon an erroneous and mistaken theory of law and one not open on the pleadings and facts cannot be sustained. We have already said that the decree entered by the judge was within the scope of the pleadings and is supported by the evidence and the findings of the judge which cannot be said rightly to be plainly wrong. We have recited in detail the findings of the judge. They amply support the conclusions that in the matters involved the respondent failed to observe the obligations owed by him to the petitioner arising out of the fiduciary relation of attorney and client existing between him and the petitioner (*Hill* v. *Hall*, 191 Mass. 253, 266–267; Restatement: Trusts, § 2, comment b; *Cohen* v. *Peterson, ante,* 315), that he failed to account to the petitioner for the moneys entrusted by her to him as her attorney (*Attorney General* v. *Bedard*, 218 Mass. 378, 385), and that he failed to communicate to her all the material facts in connection with the transactions here in question, facts which he should have brought to her knowledge (*Birch* v. *Arnold & Sears, Inc.* 288 Mass. 125, 136). It is settled that in such circumstances the respondent will not be permitted to retain any advantage gained by him through the transactions. *Hawkes* v. *Lackey*, 207 Mass. 424, 432, 433. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 448–449. *Israel* v. *Sommer*, 292 Mass. 113, 123, and cases cited. In the *Israel* case the court said at page 123, ". . . unless it appears that the presumed influence resulting from the relationship has been neutralized, by completely unselfish advice from the attorney, by independent legal advice from another, or in some other manner, the attorney cannot expect his bargain to stand. . . . In this class of cases 'the court interferes . . . on the ground of public policy, and to prevent the relations which existed between the parties and the influence arising therefrom being abused.' Cotton, L. J., in *Allcard* v. *Skinner*, 36 Ch. D. 145, 171." That principle is controlling in the light of the facts found by the judge, sup-

ported by the evidence, in the present case, and the judge was right in making no provision for the services of the respondent tainted by the breach of his fiduciary obligations to the petitioner. See Williston on Contracts (Rev. ed.) § 1713, pages 4842–4843; Restatement: Contracts, § 545.

In the light of all that we have said above it is unnecessary to consider whether the provision in the power of attorney given by the petitioner to the respondent fixing his "rate of compensation, twenty-five per cent, of recovery" was champertous. We do not intimate that it was not (see *Ackert* v. *Barker*, 131 Mass. 436; *Hadlock* v. *Brooks*, 178 Mass. 425; *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304).

The releases hereinbefore referred to are not a valid defence to the petitioner's claims. The first release did not concern the transactions complained of by the petitioner. And the execution of the second release was justifiably found by the judge to have been procured by the respondent for the purpose of fortifying himself in case he should have to meet a claim by her that his taking twenty-five per cent of the estate was unjustifiable. A release executed in favor of one standing in a fiduciary relation to the one executing the release will be subjected to the closest scrutiny by the court, *Flynn* v. *Colbert*, 251 Mass. 489, 493, and a release is not effective to discharge a fiduciary's liability for breach of the trust imposed in him unless the person executing the release had knowledge of all relevant facts that the fiduciary knew or ought to have known. *Akin* v. *Warner*, 318 Mass. 669, 675–676, and cases cited. "Unflinching fidelity to their genuine interests is the duty of every attorney to his clients." *Berman* v. *Coakley*, 243 Mass. 348, 354. We have already recited the findings of fact made by the judge and supported by the evidence concerning the circumstances attendant upon the execution of the second release by the petitioner. They support the conclusion that neither of the releases in question is a bar to recovery in the present suit. See *Lanigan* v. *Scharton*, 238 Mass. 468, 470.

*Decree affirmed.*