**In re TAMPA CHAIN COMPANY, INC., Debtor.**

**Bankruptcy No. 83–B–11083(HCB).**

United States Bankruptcy Court, S.D. New York.

Dec. 2, 1983.

---

**2.** S.Rep. No. 70 at 14–15.

Office of the U.S. Trustee for the Southern Dist. of N.Y., by Harold Jones, New York City, of counsel.

Ballon, Stoll & Itzler, New York City, for debtor; Burton D. Strumpf, New York City, of counsel.

Hahn & Hessen, New York City, for petitioning Creditor Odena Marketing Intern. Corp.; David I. Blejwas, New York City, of counsel.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Odena Marketing International Corporation ("Odena"), Adi-Zahav Ltd. ("Adi Zahav"), and Kaplan, Russin & Vecchi ("Kaplan Russin"), the three petitioning creditors ("Creditors"), move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, ordering that re-

lief be entered against the debtor, Tampa Chain Company, Inc. ("Tampa Chain") under 11 U.S.C. § 303(b)(1) of the Bankruptcy Code ("Code") upon their involuntary petition in bankruptcy and dismissing Tampa Chain's affirmative defense, on the ground that the petition was filed by three creditors each holding a claim against the debtor not contingent as to liability, as provided in § 303(b)(1) of the Code, against a debtor that was generally not paying its debts as they became due.

I

On July 25, 1983, Odena, Adi Zahav, and Kaplan Russin, pursuant to § 303(b), filed an involuntary petition for relief under Chapter 7 of the Code against Tampa Chain, a seller of gold jewelry. They also moved, by an order to show cause, for the appointment of an interim trustee pursuant to § 303(g) of the Code. After ordering initial discovery to be conducted by the parties, this Court, on the consent of Tampa Chain, granted the Creditors' § 303(g) motion on September 13, 1983, and appointed an interim trustee.

In support of their petition, the Creditors allege that, excluding employees and insiders of the debtor, there are fewer than twelve holders of claims not contingent as to liability and that Odena has such a claim exceeding $5,000, as provided in § 303(b)(2) of the Code. Alternatively, they allege that, in compliance with § 303(b)(1)'s standards, they hold claims against the debtor, not contingent as to liability and amounting in the aggregate to at least $5,000 more than the value of any lien held by them on the debtor's property securing such claims. The nature and amount of these claims are as follows: (1) Odena alleges that it is owed $1,472,658.12 for gold rope chains sold and delivered to Tampa Chain from October, 1982, to February, 1983; (2) Adi Zahav claims it is owed $1,846.00, also for gold rope chains, delivered to Tampa Chain in November of 1982; and (3) Kaplan Russin claims that it is owed $8,058.12 for legal fees for services rendered on behalf of Tampa Chain for the period for January and February, 1983.

In its answer to the involuntary petition, Tampa Chain admits that it is not generally paying its debts as they become due and that Odena is a creditor. It disputes, however, the amount of Odena's claim and denies that either Kaplan Russin or Adi Zahav are creditors. Furthermore, as an affirmative defense, Tampa Chain contends that it has at least twelve creditors which hold claims that meet the requirements of § 303(b)(1), and that less than three of the Creditors satisfy those standards; therefore, the debtor contends that the petition should be dismissed.

After both sides completed much discovery and shortly before trial, the Creditors moved for an order granting them summary judgment. They asserted that each of them holds a claim not contingent as to liability and that their claims in the aggregate exceed $5,000. They therefore claim that, since the debtor admits to generally not paying its debts when due, the petition was rightfully filed and that relief against the debtor should be ordered. In response, Tampa Chain amplified its claim that the petition was not filed by three creditors holding claims not contingent as to liability. Resolution of this motion centers on the existence and nature of each of the Creditors' claims within the context of § 303(b)(1).

While conceding Odena's status as a creditor under § 303(b)(1), Tampa Chain disputes the validity and amount of its claim. In addition to contesting the amount of the claim, the debtor alleges that Odena's claim for payment is based on sales which were induced by fraud and supports these allegations with affidavits and Israeli newspaper articles describing an alleged on-going investigation of Odena.[1]

---

1. The affidavit of debtor's counsel states that Odena initially sought relief from the debtor in an action in New York State Supreme Court. He alleges that protracted litigation had proceeded for some time before the commencement of this bankruptcy proceeding. Finally, he states that the debtor had interposed substantial counterclaims which greatly exceeded Odena's claims and which revolve around Ode-

With respect to Adi Zahav, however, Tampa Chain denies its status as a creditor. Although conceding that it possesses gold chains manufactured by Adi Zahav, Tampa Chain claims that the goods were delivered by Odena, and not Adi Zahav, either as samples or on a sale or return basis and that no sale was, in fact, ever consummated. In support of that position, the debtor denies ever receiving a delivery receipt or an invoice indicating that the goods were shipped to it or that payment was due. As to "a document labelled as an invoice"[2], however, Tampa Chain does not deny receiving it, but instead alleges that said document does not state that the goods were sold to it. Consequently, the debtor concludes that if it owes anyone for the goods, it owes Odena.

On the other hand, Adi Zahav contends that the mere fact of Odena's delivery does not contradict Adi Zahav's claims for payment for or return of the goods. In addition, Adi Zahav claims that the debtor's allegation that Odena delivered the goods, unsupported by any evidence, e.g., an invoice or sales agreement, is insufficient to deny summary judgment as to its status as a petitioning creditor.

Tampa Chain also disputes the existence of the Kaplan Russin claim. It admits that it engaged the Kaplan firm to represent it in contract negotiations with Odena and its parent company, Danot Rosenvasser, Ltd. ("Danot"), and that services were in fact rendered. The debtor contends, however, that at the inception of the attorney-client relationship, Mr. Kaplan failed to inform it

that his firm had previously represented Danot. Consequently, Tampa Chain questions whether Kaplan Russin's services were rendered for itself or on behalf of Danot.

Julius Kaplan, of Kaplan Russin, states in his affidavit that prior notice of the alleged conflict was given to Tampa Chain and that Danot gave Kaplan Russin its written consent as to Kaplan Russin's representation of Tampa Chain.[3] The debtor, of course, alleges that it was not notified of this prior conflict of interest until July of 1983. Furthermore, the debtor contends that the failure to disclose this prior conflict in January of 1983 vitiates Kaplan's claim. In response, Kaplan Russin asserts that even assuming, *arguendo,* the validity of the debtor's allegations, at best Tampa Chain would possess a possible right to counterclaim for damages; and Kaplan Russin's status as a creditor would remain unaffected.

The oral arguments, pleadings, depositions, affidavits and accompanying documentation presented by the parties on this motion for summary judgment thus pose the following question: is there a genuine issue of material fact as to whether the Creditors' claims meet the requisites of § 303(b) for bringing an involuntary petition.

## II

The test on a motion for summary judgment is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

na's sale of under-karated gold rope chains with a fraudulent intent.

2. As stated by one of its principals, Mr. Reichart, in his affidavit:

> 20. It is significant to note that there is no receipt indicating that the goods were in fact delivered to Tampa Chain nor was any invoice rendered to Tampa Chain for the payment of such goods.
> 21. It is significant to note that the movant on its application is only able to submit as proof of the said obligation a document labelled as an invoice ... which is eloquently silent as to the designation of the party to whom goods were allegedly sold and merely

indicates they were to be shipped to Tampa Chain...

By carefully refusing to categorize the document as an invoice, Tampa Chain, as its counsel conceded at the hearing on this motion, does not in the affidavit of its principal, deny its receipt.

3. The Creditors have submitted two telexes to support this allegation. The first one, dated January 12, 1983, from Kaplan to Danot, discloses the prior conflict and asks for Danot's consent to Kaplan's representation of Tampa Chain. The second telex from Danot to Kaplan, dated January 18, 1983, evidences Danot's consent.

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[4] *Project Release v. Prevost,* 722 F.2d 960 at 968 (2d Cir.1983); *Burtnieks v. City of New York,* 716 F.2d 982, 985 (2d Cir.1983); *Engl v. Aetna Life Insurance Co.,* 139 F.2d 469, 472 (2d Cir. 1943); *In re Euro-Swiss International Corp.,* 33 B.R. 872 at 877 (Bkrtcy.S.D.N.Y. 1983); 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.04 (2d Ed. 1981).

■ "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56(c) 1963 advisory committee comment. Where the case cannot be fully decided on motion, the court "shall if practicable ascertain what material facts exist without substantial controversy" and deem the same established, Fed.R.Civ.P.Rule 56(d). It is, therefore, incumbent on both the movant and his opponent to present well-pleaded papers as well as to adduce sufficient evidence so that the court can "smoke out" the facts and decide if there is an issue of fact to be tried. *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 278 (2d Cir.1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). *See also* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.15 [1.–02] (2d Ed.1981).

■ The party moving for summary judgment has the burden of demonstrating the absence of any material factual issue genuinely in dispute. Fed.R.Civ.P. 56(c); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444–45 (2d Cir.1980); *United States v. Pent-R-Books, Inc.,* 538 F.2d 519, 529 (2d

Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *In re Euro-Swiss International Corp.,* 33 B.R. 872 at 878. If the movant has made the necessary showing, his opponent then has a duty to come forward. As stated by Judge Kaufman, "[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in so doing he risks the possibility that there will be no trial." *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972). Thus, to defeat a motion for summary judgment, the non-movant must set forth concrete particulars and produce significant evidence tending to support his position. He cannot successfully rest on the laurels of conclusory allegations. Fed.R.Civ.P. 56(e). *See also Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4 (2d Cir.1983); *In re B.D. International Discount Corp.,* 701 F.2d 1071, 1077 n. 11 (2d Cir.1983); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980); *United States v. Pent-R-Books, Inc.,* 538 F.2d 519, 529 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *Applegate v. Top Associates,* 425 F.2d 92, 96 (2d Cir. 1970).

■ After submission of all of the evidence, the court must decide whether or not a reasonable inference can be drawn that there exists a genuine issue of material fact that would be submitted to the trier of facts. If so, the court should deny the motion. *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d at 279; *Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir.1962); *In re Euro-Swiss International Corp.,* 33 B.R. 872 at 878. If there is no such genuine issue, the parties are not entitled to a trial, and the court, applying the law to the undisputed material facts, may render summary judgment as a matter of law. 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* ¶ 56.04[1] (2d Ed.1981). *See also,*

---

**4.** Federal Rule of Civil Procedure 56(c) is made applicable to a proceeding on a contested involuntary petition by Rules of Bankruptcy Procedure 1018 and 7056.

*Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 378–83, 93 S.Ct. 1652, 1665–67, 36 L.Ed.2d 318 (Douglas, J., dissenting) (1973). *Accord S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 34 (2d Cir. 1978); *Jaroslawicz v. Seedman,* 528 F.2d 727 (2d Cir.1975); *In re Euro-Swiss International Corp.,* 33 B.R. 872 at 878.

■ In light of these standards, the Creditors' motion for summary judgment must be denied in part and granted in part. Fed.R.Civ.P. 56(d). Partial summary judgment is granted in favor of the Creditors as to the existence of both Adi Zahav's and Odena's claim. It is further established, as the debtor admitted in its answer, that Tampa Chain is generally not paying its debts as they become due. Summary judgment is denied, however, with respect to Kaplan Russin's claim. Trial is necessary to resolve that issue and the issues raised by the Creditors' alternative allegation that Tampa Chain has fewer than twelve creditors.

### III

Section 303(a) of the Code permits the filing of an involuntary petition under Chapter 7 "against a person ... that may be a debtor under the chapter under which such case is commenced." Since Tampa Chain clearly qualifies as a Chapter 7 debtor, § 109(b), the question that remains is whether each of the Creditors qualifies as petitioning creditors under § 303(b).

Turning as we must to the statutory language of the section expressly involved, *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976), it is clear that if the debtor has twelve or more creditors, § 303(b)(1) mandates that at least three of them join in the involuntary petition and each of the creditors must have a non-contingent claim against the debtor, which in the aggregate exceed the security for such claims by $5,000.[5]

■ Since § 101(4) broadly defines the term "claim" to include any right to payment—whether such right arises at law or in equity, the interplay between §§ 303(b)(1) and 101(4) reveals that any party holding a non-contingent claim, regardless of whether it is liquidated, matured, disputed or reduced to judgment, qualifies as a petitioning creditor pursuant to § 303(b)(1). Only the holder of a contingent claim is denied, under the Code, the right to be a petitioning creditor under § 303(b)(1). *In re All Media Properties, Inc.,* 5 B.R. 126 (Bkrtcy.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981). *See also, In re B.D. International Discount Corp.,* 701 F.2d 1071 (2d Cir.1983); *In re Covey,* 650 F.2d 877, 881 (7th Cir.1981); *In re North County Chrysler Plymouth, Inc.,* 13 B.R. 393, 396, 4 C.B.C.2d 1533, 1536 (Bkrtcy.W.D.Mo.1981); 2 *Colliers on Bankruptcy,* ¶ 303.08[11] (15th Ed.1983).

While the Code does not define "contingent claims", in *In re All Media Properties, Inc.,* 5 B.R. 126 (Bkrtcy.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981), Judge Edward H. Patton, Jr. coined a definition for that term which has since become generally accepted:

... claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such

---

5. Section 303(b) of the Code provides:

    (b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 of 11 of this title—

    (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

    (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

\* \* \* \* \* \*

On the other hand, if a legal obligation to pay arose at the time of the original relationship, but that obligation is subject to being avoided by some future event or occurrence, the claim is not contingent as to liability, although it may be disputed as to liability for various reasons.

5 B.R. at 133. *See also, In re B.D. International Discount Corp.,* 701 F.2d 1071, 1073 n. 2 (2d Cir.1983); *In re Covey,* 650 F.2d 877, 881 (7th Cir.1981); *In re McMeekin,* 16 B.R. 805, 807 (Bkrtcy.D.Mass.1982); *In re North County Chrysler Plymouth Inc.,* 13 B.R. 393, 396, 4 C.B.C.2d 1533, 1536 (Bkrtcy.W.D.Mo. 1981); *2 Collier on Bankruptcy,* ¶ 303.08[11] (15th Ed.1983).

In the application of this test, the statutory scheme makes it plain that Congress, in enacting § 303(b)(1) and eliminating the need for a provable liquidated claim required by the Bankruptcy Act, expressed a policy in favor of a more liberal taking of jurisdiction in involuntary cases than under the Act: resolution of disputes concerning claims should be left to a later time and the focus of an involuntary proceeding should be on whether the debtor is generally not paying its debts as they become due. *In re North County Chrysler Plymouth,* 13 B.R. 393, 399, 4 C.B.C.2d 1533, 1540 (Bkrtcy.W.D. Mo.1981). *See also, In re Turner,* 32 B.R. 244, 10 B.C.D. 1221, 1222 (Bkrtcy.D.Mass. 1983); *In re All Media Properties, Inc.,* 5 B.R. 126, 135 (Bkrtcy.S.D.Tex.1981), *aff'd,* 646 F.2d 193 (5th Cir.1981).

The reasons for this narrowing of focus by conferring a broad jurisdictional grant for involuntary petitions are several. First and foremost is the necessity for a speedy resolution of a contested involuntary petition. If the debtor is not paying its debts as they become due, then its creditors are entitled to the protection of their rights as afforded to them by the Code before the debtor has depleted its assets. *In re All Media Properties, Inc.,* 5 B.R. at 134. On the other hand, if the debtor is generally paying its debts as they become due, then there should be a speedy resolution of that issue so that it can resume conducting its business, unhampered by further proceedings. *Id.*

Consequently, if the debtor's defenses to a claim of a petitioning creditor are not clear and require adjudication of either substantial factual or legal questions, the creditor should be recognized as qualified to join in the bringing of an involuntary petition. *Id.* Alternatively, if it is clear that the claim is barred and the debtor raises that defense, then that creditor should not be allowed to participate in the involuntary petition. *Id.*

It is in light of and under the command of these standards, that the Second Circuit decision of *In re B.D. International Discount Corp.,* 701 F.2d 1071 (2d Cir.1983) (*"BDI"*), becomes clear. In *BDI* Judge Friendly was faced with the issues of whether an involuntary petition should be sustained when (i) the petitioning creditor's claim was disputed by the debtor and (ii) that disputed claim was the only claim supporting the allegation that the debtor was not paying its debts as they became due.

On appeal from a District Court order affirming the decision of this Court, the Second Circuit, per Judge Friendly, concluded that the debtor had failed to demonstrate at the hearing before this Court what ground it had for disputing the petitioning creditor's claim, while the creditor had offered much proof to substantiate its claim. On that basis, it affirmed the lower court holding that in order to qualify its claim under § 303(b) and to prove that the debtor is generally not paying its debts when due, a claimant need not make out a case warranting summary judgment, but must merely satisfy a two-pronged test: (i) that there are good grounds for its claim and (ii) that no defenses have been asserted in substantiable form. 701 F.2d at 1077. Because that test embraces both the eligibility and insolvency issues, its application and meaning require amplification.

■ This is particularly so with respect to the second part of the test. The language seemingly indicates that if a debtor were to merely dispute a petitioning creditor's claim, it would defeat the creditor's § 303(b)(1) status. This is contrary to the express language of the statute. As indicated by the statutory analysis outlined above, only if a substantial defense were asserted alleging that the claim was contingent would the debtor be successful in defeating an involuntary petition. To read Judge Friendly's language any other way would result in reading the language in §§ 101(4)(A) and 303(b) right out of the statute. That surely could not have been his intent.

■ This conclusion is supported by his citation with approval of the *All Media* definition of a contingent claim, 701 F.2d at 1073 n. 2, his application of that definition in a manner consistent with that of the *All Media* court, and his references to *In re Covey,* 650 F.2d 877 (7th Cir.1981). In deciding to defer any acceptance of *Covey* as the law of this circuit, Judge Friendly observed that the intricate balancing formula as to defenses developed therein is "a rule of decision ... , with respect to the inclusion of *disputed debts* in the '*generally not paying. debts*' determination" of § 303(h) and is not germane to a § 303(b)(1) determination. 701 F.2d at 1077. (Emphasis added). It is further supported by the consistent manner in which both Judge Friendly in *BDI* and the late Judge Sprecher in *In re Covey* apply the *All Media* definition. *See In re Covey, supra,* 650 F.2d at 881 n. 6, 880–82. Thus we conclude that in order for a petitioning creditor to qualify its claim pursuant to § 303(b)(1)'s requisites it must prove that (i) there are good grounds for its claim and (ii) it is a non-contingent claim. Hence, in a summary judgment context, the movant must demonstrate not only the basis for its claim, but also that there are no material facts in dispute as to the contingent nature of its claim.

## IV

In the instant case, there are no material facts in dispute with respect to the contingency *vel non* of the Odena and Adi Zahav claims. There does exist, however, a sharp dispute that may affect the contingent nature of the Kaplan Russin claim.

### A.

#### The Odena Claim

In answering the petition, the debtor conceded Odena's status as a creditor and, apparently, that Odena's claim satisfies § 303(b).[6] Nevertheless, at the hearing on this motion, Tampa Chain claims that Odena's claim does not satisfy § 303(b) because it is disputed and because Tampa Chain is alleged to possess a counterclaim. Even were these objections deemed to have been preserved, despite the admissions contained in Tampa Chain's answer, they are of no merit.

■ As stated in *All Media,* 5 B.R. at 132, 133, 135, and in numerous other cases, *see, e.g., In re Covey,* 650 F.2d 877, 878 (7th Cir.1981); *In re Turner,* 32 B.R. 244, 10 B.C.D. 1221, 1222 (Bkrtcy.D.Mass.1983) *citing with approval All Media; In re McMeekin,* 16 B.R. 805, 807 (Bkrtcy.D.Mass.1982); *In re North County Chrysler Plymouth, Inc.,* 13 B.R. 393, 398, 4 C.B.C.2d 1533, 1536 (Bkrtcy.W.D.Mo.1981); *In re Kreidler Import Corp.,* 4 B.R. 256, 258 (Bkrtcy.Md. 1980); 2 *Collier on Bankruptcy,* ¶ 303.08[11] (15th Ed.1983), the fact that a claim is disputed does not affect its status as a valid petitioning claim under § 303(b). Only contingent claims are impermissible under that section. Accordingly, the refusal of the debtor to concede the validity or amount of

---

**6.** Paragraph one of the involuntary petition alleges that Odena, Adi Zahav, and Kaplan Russin are creditors of the debtor and that their claims qualify under § 303(b)(1). Federal Rule of Civil Procedure 8(d) provides that Tampa Chain must respond to these claims in its answer or they will be deemed admitted. In its answer, Tampa Chain responded to this allegation only by denying that Kaplan Russin and Adi Zahav are creditors of the debtor. Pursuant to the provisions of Rule 8(d), Tampa Chain is deemed to have conceded the allegations made with respect to Odena's claim.

Odena's claim, without more,[7] is insufficient on a motion for summary judgment to defeat Odena's position as a § 303(b)(1) claimant.

■ Secondly, the assertion of a counterclaim against a petitioning creditor does not make its claim contingent, *In re Charles McNeil*, 5 C.B.C.2d 402, 404 (E.D.Tenn. 1981), for if it did, any debtor could defeat an involuntary petition merely by refusing to concede the claim. *Id., 2 Collier on Bankruptcy,* ¶ 303.08[11] (15th Ed.1983). *See also, In re North County Chrysler Plymouth,* 13 B.R. at 398, 4 C.B.C.2d at 1539–40.[8]

Moreover, the only evidence submitted in support of Tampa Chain's counterclaims are statements by Tampa Chain's counsel in his affidavit and the Israeli news reports. The paucity of this showing by the debtor as to these claims affords no reason for vitiating, at this stage, Odena's claim or status as a petitioning creditor.

## B.

### The Adi Zahav Claim

From the parties' arguments and submissions on this motion concerning Adi Zahav's claim, it is equally clear that no issues of material fact exist with respect to its noncontingent nature. Indeed, the facts cited by the debtor confirm Adi Zahav in its status as the holder of a non-contingent claim against the debtor under § 303(b)(1) as an undisclosed principal.

Briefly, it appears that representatives of Adi Zahav and Tampa Chain met in Israel and discussed Adi Zahav's furnishing Tampa Chain with sample gold chains. According-

ing to Tampa Chain, it received such samples, not from Adi Zahav, but from Odena. It concedes that it has in its possession certain gold chains manufactured by Adi Zahav and fails, as noted, *supra* n. 2, to deny in the affidavit of its principal that it received the Adi Zahav "document labelled as an invoice."

Adi Zahav claims that it sent the document to Tampa Chain indicating that the gold chains were shipped on a sale or return basis. At the hearing, Adi Zahav's counsel conceded that the chains may have been delivered by Odena but that such delivery does not determine the identity of the real party in interest and, consequently, the holder of the claim. Tampa Chain does not assert that a claim for the price or return of the goods, as such, is ineligible under § 303(b). Rather it submits that its obligation to pay for or return the gold chains runs to Odena from whom it received them.

■ Despite the time afforded for discovery in advance of this motion, Tampa Chain has failed to come forward with any evidence denying the salient points of the affidavit submitted by Adi Zahav: that it owned the chains and caused their delivery to Tampa Chain on a sale or return basis. It has offered no evidence that the chains belonged to Odena or any one other than Adi Zahav. To the extent that Tampa Chain's counsel attempts to dispute that assertion, it is insufficient and does not raise an issue of disputed fact sufficient to command a trial on that issue. *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Thus, Tampa Chain's position, advanced at the hearing, is that Adi Zahav

7. Tampa Chain, citing certain newspaper accounts of an investigation of Odena by Israeli authorities as to having sold under-karated gold, claims that Odena's claim, is subject to dispute. That dispute does not make the claim contingent. *All Media, supra.* Moreover, the newspaper accounts, as hearsay, are hardly evidence that Tampa Chain was sold under-karated gold.

8. In *In re Kreidler Import Corp.,* 4 B.R. 256, 259 (Bankr.D.Md.1980), the court held that a counterclaim may offset a claim so as to disqualify a creditor. *Kreidler* is distinguishable from most

other cases. There, the counterclaim was virtually admitted by the parties having stipulated that the facts underlying the counterclaim were true. *In re North County Chrysler Plymouth Inc.,* 13 B.R. at 398, 4 C.B.C.2d at 1539. *See also 2 Collier on Bankruptcy* ¶ 303.08 (15th Ed.1983).

These cases also support the construction of the *BDI* test examined above, for a documented counterclaim would seem to constitute a "substantiable defense." Nevertheless, the claim is not contingent as to liability.

is not a creditor because Tampa Chain allegedly did not know it was dealing with Adi Zahav.

This position is erroneous as a matter of law. Even assuming, *arguendo,* that Tampa Chain did not receive the "invoice" disclosing that Adi Zahav rather than Odena was the owner of the chains delivered to Tampa Chain, Adi Zahav, as an undisclosed principal, has a claim. Basic agency law holds that "a contract not under seal made in the name of an agent as ostensible principal, may be sued on by the real principal at the latter's election." *Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.,* 211 N.Y. 68, 70, 105 N.E. 88 (1914). (Cardozo, J.) The principal has a claim even where the agent denies his existence and even where the contracting party would not have entered into the arrangement had it known of the name of the principal. *Ibid. Accord Restatement (Second) of Agency,* §§ 303 Comment a, 304 Comment a (1958); *Leon Bernstein Commercial Corp. v. Pan American World Airways,* 72 A.D.2d 707, 708, 421 N.Y.S.2d 587, 589 (App.Div. 1st Dept.1979); *Taub v. Colonial Coated Textile Corp.,* 54 A.D.2d 660, 661, 387 N.Y.S.2d 869, 870 (App. Div. 1st Dept.1976). As such, Adi Zahav is a creditor holding a non-contingent claim.

### C.

### *The Kaplan Russin Claim*

Here, unlike the assertions made with respect to the Odena and Adi Zahav claims, there is a material factual dispute. Kaplan Russin avers that they disclosed the conflict of interest to Tampa Chain. Reichart, the person with whom Kaplan apparently discussed the representation, denies having been so informed. On the basis of that denial, Tampa Chain claims that its agreement to pay Kaplan Russin for legal services performed is void and that Kaplan Russin has no claim.

Mindful as we are of the Congressional expansion of the type of claims that afford a creditor with status as a petitioner under § 303(b) of the Code, it appears, nevertheless, that a party holding only a claim based on a void agreement enjoys no such status. "Claim" is defined by § 101(4) of the Code as a right to payment. If an agreement is truly void, as opposed to voidable, it lacks operative legal effect. 1 Corbin, *Contracts* § 7 (1963). *See also, Kelly Asphalt Block Co. v. Barber Asphalt Paving Co., supra,* 211 N.Y. at 72, 105 N.E. 88.[9] A claim based on voidable contract is a disputed claim; *All Media,* 5 B.R. at 132; a claim based on a void agreement, however, lacks an operative right of payment.

An agreement to engage an attorney and to pay for his or her services that is entered into without revelation by the attorney of a conflict of interests violates Canon 5 of the Professional Code of Ethics. As such, it may constitute an illegal bargain and the attorney might be precluded from compensation per the agreement. *In re Will of Merrick,* 107 Misc.2d 988, 990, 436 N.Y.S.2d 125, 127 (Sur.Ct.Suff. Cty.1980). But a finding that a contract is illegal on these grounds does not always result in an *ipso facto* denial of compensation. A contract's illegality does not always negate the legal effect of the rendition of any acts or services. 1 Corbin, *Contracts* § 7; *Daughtery v. Kessler,* 286 A.2d 95, 97 (1972). Whether the agreement is void or voidable and whether the attorney is precluded from recovery in *quantum meruit* for the services rendered depends on all the facts and circumstances and whether there are additional public policy considerations involved. *See generally, Note, Attorney's Recovery in Quantum Meruit for Legal Services Rendered Under a Contract Which is Illegal or Void as Against Public Policy,*

---

9. Void is often confused with the word "voidable," *Daugherty v. Kessler,* 264 Md. 281, 286 A.2d 95, 97 (1972), but the error involved is nearly certain to be an error of legal operation of fact and not of mere terminology. *Id.* A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance. *Restatement (Second) of Contracts* § 7 (1977).

100 A.L.R.2d 1378 (1965). *Compare In re Will of Merrick, supra,* (attorney's failure to disclose his conflict of interest seems to render his contract for services void *ab initio*) with *In re Clarke's Estate,* 12 N.Y.2d 183, 188, 237 N.Y.S.2d 694, 188 N.E.2d 128 (1962) (failure to disclose a conflict of interest is sufficient to support a denial of compensation, *i.e.,* the contract is merely avoidable).[10]

Public policy concerns sufficient to deny compensation in any form are found, for example, in those cases where an attorney appointed by the court has a conflict of interest. *Woods v. City National Bank & Trust Co. of Chicago,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) (counsel representing indenture trustee and bondholders committee denied compensation); *Weil v. Neary,* 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1928) (contract between attorney for the trustee in bankruptcy and attorney for the creditors held void on statutory and public policy grounds, where trustee's counsel was to share his compensation with the creditor's attorney and the former was to be supervised by the latter in the performance of his services). Similar concerns were found in *Allen v. Moushegian,* 320 Mass. 746, 71 N.E.2d 393 (1947). There, the court upheld the trial court's findings that the attorney's contingent fee arrangement for his services in a probate matter was void because he failed to disclose material facts to his client, thus breaching his fiduciary obligations to her and putting his ethical behavior in serious doubt. 71 N.E.2d at 399–400. The court refused, moreover, on public policy grounds, to grant the attorney a recovery in *quantum meruit* for his services, affirming the lower court's refusal to make any provision for the attorney's services because they were tainted by the breach of his fiduciary obligations to his client. *Id.* 71 N.E.2d at 400.

Trial is necessary on this issue to explore all the facts and circumstances and to resolve the dispute as to whether the conflict was indeed revealed.

For the foregoing reasons, it is

ORDERED, that, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, that the status of Odena and Adi Zahav as petitioning creditors and that Tampa Chain was generally not paying its debts when due are not in substantial controversy and are deemed established at the trial of this action. The parties are directed to appear before the undersigned at Courtroom 201, United States Courthouse, 40 Foley Square, New York, New York, at 10:00 A.M. on December 16, 1983, for a final pre-trial conference, prepatory to trial on the remaining issues.

---

**10.** A different situation lies where the attorney fails to reveal his own interest in the transaction which is in conflict with that of his client. Such an agreement is void. See 6A Corbin, *Contracts* § 1457 (1963). "No man can serve two masters; for either he will hate the one, and love the other; or else he will hold to the one, and despise the other. He cannot serve God and mammon." Matthew 6:24. *See also Restatement (Second) of Agency* §§ 387 *et seq.* (1958).