In re John C. TURNER, Debtor.

Bankruptcy No. 82–00930–L.

United States Bankruptcy Court, D. Massachusetts.

Aug. 9, 1983.

Robert Somma, Goldstein & Manello, Boston, Mass., for petitioning creditors.

Jon D. Schneider, Goodwin, Proctor & Hoar, Boston, Mass., for debtor.

## MEMORANDUM DECISION

THOMAS W. LAWLESS, Chief Judge.

### BACKGROUND

Certain alleged creditors ("Petitioning Creditors") of John C. Turner ("Turner") commenced the within proceeding by filing an involuntary petition under Chapter 7 of the Bankruptcy Code seeking an order for relief to be entered against Turner ("Petition") ("Code"). Turner filed an Answer and Counterclaim denying that he owed any debts to the Petitioning Creditors.

Turner has filed a Motion for Summary Judgment ("Motion") and a Memorandum and Affidavit of Turner in support thereof. The Motion seeks to dismiss the Petition on the grounds that the Petitioning Creditors' claims, if any, are contingent as to liability and that they, therefore, lacked standing to file the involuntary petition. By order dated November 12, 1982, the Court deferred any action with respect to the Petitioning

Creditors' request to examine Turner individually, pending the results of his examination by the Creditors' Committee appointed in the related voluntary Chapter 11 proceedings involving seven corporate debtors owned and/or alleged to be controlled by Turner (the "Corporate Debtors"). *See Thrifty Liquors, Inc., et al.,* 26 B.R. 26. By orders dated April 26, 1983, the Court further deferred the motion of the Petitioning Creditors for discovery of Turner individually, pending resolution of the Motion for Summary Judgment. On May 17, 1983, the Petitioning Creditors filed a Memorandum and Affidavits in opposition to the Debtor's Motion for Summary Judgment, asserting (1) that there were numerous genuine issues of material fact relating to the non-contingency of certain claims of the Petitioning Creditors which precluded the grant of summary judgment, and (2) that the Petitioning Creditors held claims that were "not contingent as to liability", pursuant to Section 303(b) of the Code. Additionally, the Petitioning Creditors have filed a cross motion for summary judgment on the issue of the Petitioning Creditors' standing to bring the involuntary proceeding.

### DISCUSSION

The involuntary petition was filed by seven creditors holding claims against Turner in the aggregate amount of approximately $900,000.00, which are listed as "not contingent to liability" for "the sale and delivery of beverages to certain entities of which the Debtor is the legal or beneficial owner and the person in control, including, but not limited to . . ." the seven voluntary Chapter 11 corporations now pending before this Court. *Creditor Petition,* at 2. Five of the Petitioning Creditors have filed affidavits in opposition to the Debtor's Motion for Summary Judgment, listing claims against Turner based on the following allegations: (i) Turner's liability for issuing checks, without knowledge of whether there were sufficient funds in the account; (ii) Turner's agreement obligating himself to cause the Corporate Debtors to repay certain indebtedness if the Petitioning Creditors would continue to deliver goods to the Cor-

porate Debtors; (iii) Turner's fraudulent misrepresentations concerning the Corporate Debtors' ability to pay for the goods; (iv) Turner's illegal operation of the Corporate Debtors in violation of the liquor laws thereby rendering himself personally liable to creditors for the debts of the Corporate Debtors; and (v) Turner's operation of the Corporate Debtors in total disregard for corporate formalities thereby rendering himself personally liable for the debts of the Corporate Debtors, ("the "corporate veil claims").

Turner's answer to the involuntary petition denied that the Petitioners were non-contingent creditors of Turner and he asserts a counterclaim alleging that the involuntary petition was filed in bad faith because, among other things, the "[d]efendants knew that their claims, if any, against Turner were contingent as to liability, but knowingly made a false assertion that the claims were non-contingent." Additionally, Turner has filed an affidavit in support of his Motion for Summary Judgment asserting that he is sole stockholder and director of only three of the Corporate Debtors and that his association with the other four Corporate Debtors was pursuant to a co-operative buying program as permitted under the regulations of the Alcoholic Beverages Control Commission. Turner further avers the following: (i) all orders for beverages were placed in the name of one or more of the Corporate Debtors; (ii) all goods were delivered to the Corporate Debtors for sale in the ordinary course of business; and (iii) all bills for beverages were rendered to the Corporate Debtors, individually. Turner further states that he never executed any guaranty or document purporting to be a guaranty of the Corporate Debtors' obligations to any of the Petitioning Creditors, that no Petitioning Creditor ever asserted orally or in writing that Turner was personally liable for payment prior to filing of the involuntary petition and that he has never admitted such liability for any of the Corporate obligations.

When ruling on a motion for summary judgment, it is not the function of the

Court to resolve factual disputes on the basis of the submissions of the parties. Rather, the Court need only determine whether a genuine issue as to any material fact exists. In making this determination, the Court is mindful that all doubts concerning the existence or nonexistence of a genuine issue of fact are to be resolved in favor of the party against whom the motion is sought. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Hence, Turner, the moving party herein, has the burden of affirmatively demonstrating the lack of any genuine issue of fact on every relevant issue raised by the pleadings. *Mack v. Cape Elizabeth School Bd.,* 553 F.2d 720, 722 (1st Cir.1977). Further, all inferences to be drawn from underlying facts contained in affidavits, exhibits and depositions filed with the court, must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Ferguson v. Omnimedia, Inc.,* 469 F.2d 194 (1st Cir.1972). Applying these standards herein, I find as follows:

This cause explores the limits of the Bankruptcy Code's expansion of the requirements concerning holders of claims entitled to bring an involuntary petition. As the court stated in *In re All Media Properties, Inc.,* 5 B.R. 126, 132–133 (Bkrtcy.S.D. Tex.1980), aff'd (on the basis of the bankruptcy court's opinion) 646 F.2d 193 (5th Cir.1981) (*"All Media"*), when comparing the involuntary provisions of the Bankruptcy Code with the former Bankruptcy Act:

> [T]here is no longer any requirement that the claims be provable in order for an involuntary petition to be brought. Only holders of claims that are contingent as to liability are denied the right to be petitioning creditors. It is significant that holders of unmatured, disputed and unliquidated claims are not specifically barred from being petitioning creditors.
>
> Furthermore, § 303 indicates that there is a difference between a disputed claim, an unmatured claim, an unliquidated claim and a contingent claim. Otherwise, there would be no necessity to include the word contingent. Stated another way, just because a claim is unliqui-

dated, disputed or unmatured apparently does not mean it is contingent.

Therefore, in the first instance, a petitioning creditor must be an entity holding a claim that is not contingent as to liability. 11 U.S.C. § 303(b)(1); *see also All Media, supra,* at 132.

Decisions rendered under the former Bankruptcy Act defining "contingent" claims are not necessarily controlling under the Code because those analyses are generally colored by the Act's requirement that the claims not only be non-contingent, but also "provable" and, in the main, "liquidated." Section 59(b), formerly 11 U.S.C. § 95(b); *see, e.g., Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376 (5th Cir.1971); *In re Walton Plywood,* 227 F.Supp. 319 (W.D.Wash.1964); *In re East Coast Mechanical Contractors, Inc.,* 2 B.C.D. 1309 (Bkrtcy.D.Conn.1976). The *All Media* court elaborated a Code definition of contingency that has been widely followed:

> [C]laims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

Applying this standard, it is necessary to look at the claims asserted by the Petitioning Creditors herein to determine if they are proper petitioning creditors.

The basic contention of the Petitioning Creditors is that Turner is personally liable for all or some of the debts of the seven Corporate Ch. 11 Debtors also before the Court. While the Petitioning Creditors have asserted a variety of legal theories to establish this liability, Turner does not admit full or even partial liability on any of these claims. Research has revealed no case upholding the standing of the petitioning creditors to bring an involuntary petition where all asserted claims are disputed by the alleged debtor. Nevertheless, the

lack of legal precedent is not necessarily fatal to the Petitioning Creditors, as the instant case represents a logical extension of Congress' relaxation of the claim requirements for involuntary petitions. "By eliminating the need to have a provable, liquidated claim, the Congress has stated a policy in favor of a liberal taking of jurisdiction in involuntary cases. Resolution of disputes concerning claims is left to a later time." *In re North County Chrysler Plymouth, Inc.,* 13 B.R. 393, 399 (Bkrtcy.W.D.Mo. 1981). Turning to the Petitioners' claims, however, I find that four asserted claims are insufficient to support an involuntary petition.

 The claims based on Turner's liability as an *alter ego* of the Corporate Debtors are, by their very nature, contingent as to liability. Even accepting as true the Petitioning Creditors' allegations that Turner totally disregarded corporate formalities in connection with the affairs of the Corporate Debtors for the purpose of Turner's Motion, Turner's personal liability for the Corporate debts could only arise upon the occurrence of an extrinsic future event—a finding of personal liability by a competent judicial tribunal. It is hornbook law that a corporate entity will not be easily pierced so as to hold a stockholder personally liable for corporate debts. *See Appleby v. Wallins,* 336 Mass. 35, 37, 142 N.E.2d 339 (1957); *Rock-Ola Mfgr. Corp. v. Music & Television Corp.,* 339 Mass. 416, 424, 159 N.E.2d 417 (1959). Even if Turner owned all of the stock of each corporation and was in absolute control of the affairs of each corporation, he and his corporations would not be deemed identical "in the absence of a fraudulent purpose in the organization of the corporation." *Galdi v. Caribbean Sugar Co.,* 327 Mass. 402, 408, 99 N.E.2d 69 (1951) (quoting *M. McDonough Corp. v. Connolly,* 313 Mass. 62, 66, 46 N.E.2d 576 (1943)). Petitioners have alleged no such improper purpose in the organization of the Corporate Debtors or even that Turner organized them. Unlike the case of a guarantor of a promissory note where the maker has defaulted prior to the creditors' involuntary petition, *see In re McNeil,* 13 B.R. 484 (D.C.E.D.Tenn.1981);

*In re Arker,* 6 B.R. 632 (Bkrtcy.E.D.N.Y. 1980), none of the conditions necessary to trigger Turner's liability for the Corporate debts have occurred prior to filing of the petition. Therefore, the claims based upon Turner's liability as an *alter ego* of the Corporate Debtors are insufficient to support the involuntary petition.

 Similarly, the claims based upon Turner's alleged violation of the Massachusetts law prohibiting any entity from holding more than three retail liquor licenses, M.G.L. c. 138 § 15, are insufficient as a matter of law to bring an involuntary petition. No private cause of action is created for violation of this statute. While violations of this law may result in an order of divestiture or forfeiture of the liquor license and such violations, if established, may be evidence that Turner should be treated as the Debtor Corporations' *alter ego,* the violations *per se* do not create non-contingent claims against Turner.

 Three of the Petitioning Creditors have also asserted claims based upon allegations that Turner "agreed to cause the Corporate Debtors to repay certain indebtedness if . . . [the Petitioning Creditor] would continue to deliver goods to the Corporate Debtors and such sums have not been paid. . . ." *See* Affidavits of Boston Beverage Co.; Burke Distributing Corp.; and M.S. Walker, Inc. The Petitioning Creditors argue that upon such agreement, "Turner became personally liable to the Debtors; no subsequent event is necessary to affix his liability." *Petitioning Creditors' Memorandum in Opposition to Debtor's Motion for Summary Judgment,* at 15. Presumably, the "Debtors" referred to in this unsupported conclusion of law are the seven Corporate Debtors. Assuming, without deciding, that this is a correct statement of the law and Turner somehow became personally liable to the Corporate Debtors by virtue of this agreement, the Court can not envision how his liability to the Corporations gives rise to a non-contingent claim by these Petitioning Creditors against Turner. *See generally In re Naza-*

*rian*, 5 B.R. 279, 281 (Bkrtcy.D.Md.1980) (corporate officer's liability for failure to make payments to employee benefit fund can only be asserted by employees and not pension fund trustee). The Petitioning Creditors have failed to meet their burden of proof that their claims are non-contingent claims capable of supporting an involuntary petition. *See Marine Properties v. Trust Co.*, 317 U.S. 78, 83–85, 63 S.Ct. 93, 96–97, 87 L.Ed. 64 (1942); *Grubbs v. Pettit*, 282 F.2d 557, 562 (2d Cir.1960).

The fourth and fifth claims asserted by the Petitioning Creditors are both based upon claims for goods sold and delivered to the Corporate Debtors for which payments were made by means of checks which were subsequently dishonored. The total of these dishonored checks is in excess of $50,000.00. The Petitioning Creditors argue that Turner is personally liable on these checks on the bases that Turner signed his name to the checks without disclosing his representative capacity and/or that Turner fraudulently misrepresented the Corporate Debtors' ability to pay for the goods when he issued the checks. As to the latter claim, a corporate officer's liability for issuing corporate checks when he knew or should have known there were insufficient funds in the corporate account sounds in tort. *See Meehan v. Adams Enterprises, Inc.*, 211 Kan. 353, 507 P.2d 849 (1973); Annotation, 47 A.L.R.3d 1250. Even if Turner acted on behalf of the Corporate Debtors, he is personally liable for his own tortious conduct. *Id; see Refrigeration Discount Corporation v. Catino*, 330 Mass. 230, 112 N.E.2d 790 (1953). While the Petitioning Creditors' allegations of fraudulent conduct constitute a "claim" as that term is defined in 11 U.S.C. § 101(4), the clear weight of authority holds that tort claims are contingent since they are dependent upon a judicial finding of liability against the alleged tortfeasor. *See In re Dill*, 13 B.R. 9, 10 (Bkrtcy.D.Nev.1981); * *All Me-*

*dia, supra,* at 133. Turner's legal duty to pay these corporate checks does not come into existence until the occurrence of future events—the initiation of suit and the judicial imposition of liability. Since the Petitioning Creditors have failed to establish that these claims are other than contingent claims, these claims are insufficient as a matter of law to sustain the involuntary petition. *Cf. In re Dill, supra* (affidavit of attorney for the petitioning creditors created a factual issue whether the alleged debtor admitted liability to the attorney on certain tort claims). No such admission of liability is alleged to have been made by Turner in the instant case and the tort claims are thus contingent as to liability.

As to the last asserted claims, five of the Petitioning Creditors received checks in an aggregate amount in excess of $50,000.00 which were subsequently dishonored and remain unpaid. The checks were imprinted in the left-hand corner with a printed legend bearing the Corporate Debtors' names. However, the checks were signed by Turner, as drawer, without written disclosure or indication that he was doing so in a representative capacity. The Petitioning Creditors seek to hold Turner personally liable for these dishonored checks.

Although codified by statute, the rights of parties to negotiable instruments are essentially contractual in the sense that parties voluntarily incur liability and they can modify it by agreement. *See* WHITE and SUMMERS, UNIFORM COMMERCIAL CODE § 13–6 (1st ed. 1972). The contract of a drawer of a check is established in M.G.L. c. 106 § 3–413(2) as follows: "The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any indorser who takes it up. The drawer may disclaim this liability by drawing without recourse." While a drawer is nominally a "secondary"

---

* Despite the opinion of the Ninth Circuit Bankruptcy Appellate Panel in *In re Dill*, 30 B.R. 546, 10 B.C.D. 871 (Bkrtcy. 9th Cir.1983), which this Court has studied, careful consideration persuades us that the two-prong definition of contingent claims contained in *All Media*, as well as the distinction between certain types of tort claims contained in *In re Lawton*, 119 F.Supp. 724 (S.D.W.Va.1954), are controlling herein.

party on an instrument, M.G.L. c. 106 § 3–102(1)(d), the drawer becomes primarily liable to the holder upon dishonor and notice of dishonor. In the instant case, dishonor and any necessary notice of dishonor have occurred, see M.G.L. c. 106 § 3–508, and the drawer of these checks is primarily obligated to the Petitioning Creditors.

The Petitioning Creditors argue that Turner is personally liable as the drawer of these dishonored checks on the basis of M.G.L. c. 106 § 3–403(2)(b) which provides: "An authorized representative who signs his own name to an instrument ... except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity...." Under the statute and the law of Massachusetts, Turner's failure to indicate his representative capacity on the check is *prima facie* evidence that he is personally liable for the checks and he has the burden of establishing any defense. *Commonwealth Bank & Trust Co. v. Plotkin*, 371 Mass. 218, 355 N.E.2d 917 (1976); *Carleton Ford, Inc. v. Oste*, 1 Mass.App. 819, 295 N.E.2d 402 (1973); M.G.L. c. 106 § 3–307. This *prima facie* case exists against a drawer of a check who does not disclose his representative capacity even though the check is imprinted with the company name. *Carleton Ford, Inc. v. Oste, supra; see also Colonial Baking Co. of Des Moines v. Dowie*, 330 N.W.2d 279 [35 U.C.C.Rep. 874] (1983) (collecting cases from other jurisdictions).

The Petitioning Creditors have *prima facie* evidence that Turner is personally obligated on the dishonored checks. Unrebutted, such evidence would be sufficient to find that the Petitioning Creditors hold claims against Turner that are not contingent as to liability and summary judgment would enter in favor of the Petitioning Creditors on their standing to bring the involuntary petition. Before entering judgment in favor of the Petitioning Creditors on their cross-motion for summary judgment, however, it is necessary to consider Turner's answer and affidavit to see whether any factual issue is presented.

■ As noted above, Turner is *prima facie* liable as drawer of the checks and he has the burden of pleading the exception. M.G.L. c. 106 § 3–403(2)(b); *Commonwealth Bank & Trust Co. v. Plotkin, supra.* Fed.R.Civ.P. 8(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 708, requires that affirmative defenses be affirmatively pleaded. In the Debtor's answer to the involuntary petition, Turner alleged that he had not signed any personal guarantees nor assumed any personal liability for Corporate claims. However, it is well established that the type of showing needed to bring the check or note within the "except" clause of § 3–403(2)(b) must necessarily amount to more than a mere self-serving allegation of the signer's subjective intent to sign in a representative capacity. *Commonwealth Bank & Trust Co. v. Plotkin, supra; Carleton Ford v. Oste*, 1 Mass.App. 819, 295 N.E.2d 402 (1973); *Colonial Baking Co. of Desmoines v. Dowie*, 330 N.W.2d 279 [35 U.C.C.Rep. 874] (1983); *Rotuba Extruders, Inc. v. Ceppos*, 46 N.Y.2d 223, 413 N.Y.S.2d 141, 385 N.E.2d 1068 [25 U.C.C.Rep. 765] (1978); *Seale v. Nichols*, 505 S.W.2d 251 [14 U.C.C.Rep. 457] (Tex.1974). Turner had to affirmatively plead that it was "understood between the parties" or that "it was agreed between the parties" or that "prior dealings between the parties established" that Turner was not to be held personally liable on the checks. Turner has treaded dangerously close to waiving this defense.

■ However, Turner's answer, counterclaim and affidavit, viewed in the light most favorable to him and in accordance with the liberal construction given to pleadings under the Federal Rules of Civil Procedure, demonstrates a sequence of previous conduct between the parties sufficient to prevent the entry of summary judgment against him. Turner's affidavit states that: (i) all orders for beverages were placed in the name of one or more of the Corporate Debtors; (ii) all goods were delivered to the Corporations for sale in the ordinary course

of business; (iii) all bills for beverages were rendered to the individual Corporations; and (iv) none of the Petitioning Creditors ever asserted orally or in writing that Turner was to be held personally liable prior to the filing of the involuntary petition. In view of the fact that the Debtor's answer and affidavit were filed in response to an involuntary petition that did not specify the legal bases of the Petitioning Creditors' claims, I consider it appropriate to deem the answer amended to conform with the proof offered by the affidavit and the affirmative defense properly raised. *See Retail Clerks International Ass'n v. Lion Dry Goods, Inc.,* 341 F.2d 715 (6th Cir.1965), *cert. den.* 382 U.S. 839, 86 S.Ct. 87, 15 L.Ed.2d 81 (1965); *Rossiter v. Vogel,* 134 F.2d 908 (2nd Cir. 1943); *Bergren v. Davis,* 287 F.Supp. 52 (D.Conn.1968); 6 J. Moore, Moore's Federal Practice ¶ 56.11[3] (2d ed. 1982); *but see Baker v. Chicago, Fire & Burglary Detection, Inc.,* 489 F.2d 953 (7th Cir.1973); *Roe v. Sears, Roebuck & Co.,* 132 F.2d 829 (7th Cir.1943). Turner has sufficiently raised the affirmative defense to preclude the entry of summary judgment against him on the issue of the Petitioning Creditors' standing to bring the involuntary petition. Whether Turner has sufficiently established his defense to ultimately prevail on this issue is a factual issue that is inappropriate for summary judgment and the matter will be set for trial.

This matter will be set for trial before allowing the Petitioning Creditors' inquiry into whether Turner is generally paying his debts as they become due because there is a factual issue whether the Petitioning Creditors hold claims against Turner that are non-contingent as to liability. The *All Media* court expressed the following view of claims that are subject to affirmative defenses: "[I]f a legal obligation to pay arose at the time of the original relationship, but that obligation is subject to being avoided by some future event or occurrence, the claim is not contingent as to liability, although it may be disputed as to liability for various reasons." *All Media, supra,* at 133. The Petitioning Creditors argue that under this definition they hold disputed claims capable of supporting an involuntary petition. However, the Petitioning Creditors overlook one basic prerequisite: the *creation of a legal obligation at the time of the original relationship,* i.e., the passing of the checks. All that the Petitioning Creditors have shown is that there is *prima facie* evidence that a legal obligation arose at the time of the original relationship. *Prima facie* evidence is not the same as the creation of an undisputed legal obligation. The court in *All Media* espoused the preceding analysis in the context of the ordinary debt that arises from the sale of merchandise, where it is undisputed that a legal obligation to pay initially arose. While the obligation of a purchaser of goods may possibly be avoided because of defective merchandise, *All Media* correctly stated that such an event would merely render the debt disputed but would not make it a contingent one. In the present case, Turner's assertion of the affirmative defense raises a factual dispute whether a legal obligation ever arose between the parties. Under these circumstances, I consider it inappropriate to allow the Petitioning Creditors to delve into Turner's affairs without first establishing the Petitioning Creditors' standing to do so.[1]

1. Even if the Petitioning Creditors fifth claims are considered non-contingent and merely disputed as to liability (a finding that this Court does not make), Turner's affirmative defense should be adjudicated before the Petitioning Creditors initiate a "generally paying debts" determination. As a matter of expeditious determination of the issues, the issue of Turner's defense is far more capable of prompt resolution than consideration of whether he is promptly paying his other, and as yet unknown debts. Moreover, notions of fundamental fairness mandate that the Debtor be given an opportunity to litigate his defense because his successful defense will eliminate the need for any further inquiry and thus save the alleged debtor Turner the expense and indignity of a full inquiry into his personal affairs. Conversely, if the Petitioning Creditors are successful, these claims will probably be included in the "generally paying debts" determination. *See Matter of Covey,* 650 F.2d 877, 883–84 (7th Cir.1981). The *All Media* court intimated that under certain circumstances—where the defenses do not require the adjudication of sub-

Accordingly, Turner's motion for summary judgment is granted on four of the Petitioning Creditors' claims, the parties cross motions for summary judgment are denied on the fifth claims and a pre-trial will be scheduled for hearing on the fifth claims.

Parties are to submit an appropriate Order.

stantial factual and legal issues—defenses to claims may be adjudicated in a preliminary standing dispute in the early stages of an involuntary proceeding. *All Media, supra,* at 135. In the instant case, where the totality of the Petitioning Creditors' non-contingent claims (if the U.C.C. claims are considered to be merely disputed) are subject to avoidance, I would deem it appropriate to override the general policy against litigation of defenses, *see All Media, supra* at 134–135, and proceed with the adjudication of Turner's defense to these claims.