**In re FIRST ENERGY LEASING CORPORATION, Debtor.**

**Bankruptcy No. 884–40277–18.**

United States Bankruptcy Court, E.D. New York.

March 29, 1984.

Baskin & Sears, P.C., New York City, for debtor.

Barst, Mukamal & Babitt, New York City, for petitioning creditors.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

First Energy Leasing Corporation ("First Energy"), the debtor, has moved to dismiss the involuntary petition filed by three alleged creditors, Energy Minder Corp. ("Energy Minder"), National Seminars Inc., d/b/a National Sattelite Seminars Network ("National Seminars") and En-Con Enterprises, Inc. ("En-Con") (referred to collectively as "petitioning creditors") on the grounds that these entities are not holders of claims and consequently are precluded from commencing an involuntary case under 11 U.S.C. § 303.

## PROCEDURAL BACKGROUND

On February 16, 1984, the petitioning creditors filed a petition commencing an involuntary case against the debtor, First Energy, and contemporaneously by order to show cause obtained court approval for the reduction of the debtor's time to answer or otherwise move. The order to show cause also sought the appointment of an interim trustee to take possession of the debtor's property pursuant to § 303(g) of the Bankruptcy Reform Act of 1978 ("Code").

On February 23, 1984, the return date of the order to show cause why an interim trustee should not be appointed and the date on which First Energy's answer or responding motion was due, First Energy cross-moved to dismiss the involuntary case.

The court conducted the hearing scheduled for that date on the petitioning creditors' motion to appoint a trustee. During the course of the hearing, the motion was withdrawn. The court set the date of March 6, 1984 for a hearing on First Energy's cross-motion. A hearing was conducted on March 6, 1984.

## FACTUAL BACKGROUND

First Energy is engaged in the business of leasing energy management systems to third-party investors, who in turn sublease the systems to end users. The systems are designed to be used either in a commercial or industrial context to efficiently regulate the business' oil, gas, steam and electrical usage. First Energy markets its equipment leasing program as a tax shelter with income generating propensities.

The history of the petitioning creditors and the debtor manifests a substantial interrelatedness between the entities. In March of 1983, James Marci ("Marci"), now president and sole shareholder of First Energy, and Irwin Berman, currently a principal of both National Seminars and En-Con, approached John DeRaffale, currently a principal of both En-Con and Energy Minder Corp., to become part of a new venture which would engage in the lease of energy management tax shelters. Pursuant to these discussions, First Energy was established for the purpose of leasing the energy management systems, En-Con was formed to supply the individual energy management units to First Energy, and First American Capital, Inc. ("First American") was formed as a holding company. See generally Declaration of John De Raffale dated March 1, 1984 ("DeRaffale Decl."); Affidavit of James Marci dated February 22, 1984 ("Marci Af."); Declaration of Irwin Berman dated March 1, 1984 ("Berman Decl.").

En-Con's claim against First Energy arises out of a contract for the supply of energy conservation units. Although the parties dispute the date of formation of the contract, they are in accord that an oral contract was made in or about July or August of 1983. Marci Af. at pp. 5–6; DeRaffale Decl. at p. 3. The contract was subsequently modified in November of 1983 to provide for the purchase and sale of 2,950 units at the price of $2,500 cash per unit and an additional amount of $97,-500.00, which obligation was to be embodied in a full recourse promissory note. Therefore, the total cash down payment required was $7,375,000.00. DeRaffale Decl. at p. 4. The parties are substantially in agreement that First Energy paid to En-Con a sum in excess of one million dollars in partial payment of the required down payment. Marci Af. at p. 6; DeRaffale Decl. at p. 4.

Currently, both First Energy and En-Con assert that the other has breached the contract. The papers submitted in this matter indicate a divergence between the parties as to the substance of at least two terms of the oral contract. First, En-Con claims that the contract required delivery of 1,000 units by December 1, 1983 and the balance prior to December 31, 1983. DeRaffale Decl. at p. 4. First Energy contends, alternatively, that under the contract the energy conservation systems were to be delivered no later than December 20, 1983. Marci Af. at p. 6.

Secondly, En-Con asserts that a term of the contract required First Energy to deliver to En-Con its initial payment of $2,500.00 per unit upon First Energy's receipt of a corresponding payment of $5,000.00 from each investor. En-Con further alleges that First Energy did receive such sums and did not remit the required portions to En-Con. See DeRaffale Decl. at pp. 3, 5.

Energy Minder's claim arises out of two payments which it made to First Energy; the first in the amount of $20,000.00 was made on June 3, 1983, the second in the amount of $15,000.00 was made on June 9, 1983. Id. at p. 6. While First Energy concedes that such amounts were paid to it, the parties dispute whether these payments constituted a loan made to the alleged debtor, Id., or, as First Energy contends, advances made for advertising and marketing of the En-Con system made by En-Con with no expectation of repayment, Marci Af. at pp. 3–4.

The third petitioning creditor, National Seminars, asserts a claim for $12,500.00 arising out of two separate categories of transactions. First, National Seminars contends that it enrolled two financial planners, Chuck Reitz and Jay Arigo, into its seminars and placed advertising for these men in the Wall Street Journal at the request of and for the benefit of First Energy. Berman Decl. at p. 1. Secondly, National Seminars contends that First Energy opened an account with MCI for telephone service and failed to reimburse National Seminars for the telephone charges incurred. Id. at p. 3.

First Energy disputes that it is indebted to National Seminars. First, it asserts that

neither Reitz nor Arigo were employed by it. Marci Af. at p. 4. Secondly, it asserts that it never agreed to assume the Reitz or Arigo obligations. Secondly, First Energy argues that the obligation to make payments to MCI for telephone charges incurred by it and National Seminars rested on National Seminars pursuant to the terms of their space sharing arrangement, under which National Seminars utilized the business premises of First Energy. *Id.* at p. 5. Finally, First Energy claims that National Seminars owes to it an amount in excess of $25,000.00, *Id.* at 4, which would more than cancel First Energy's alleged obligation to National Seminars. Marci alleges that First Energy advanced $10,000.00 for the benefit of National Seminars as a loan to an employee of National Seminars, Lee Rosenberg. *Id.* at 5. Moreover, Marci asserts that First Energy advanced sums to cover National Seminars' employee payroll, to pay for the health insurance of Irwin Berman and his secretary, and to cover Berman's travel expenses. *Id.*

Irwin Berman, of National Seminars, disputes First Energy's position that moneys are due First Energy from National Seminars. First, he asserts that the $10,000.00 payment to Rosenberg was on his personal request and therefore Berman, not National Seminars, is personally indebted for its repayment. Secondly, he asserts that the payment of his travel expenses was rendered not for the benefit of National Seminars but for the benefit of United American Financial Corp. with which Berman was also associated. Thirdly, payments by First Energy for Berman's health insurance and his secretary's health insurance were made in consideration of Berman's services as an unpaid consultant to First Energy. Fourthly, Berman denies that First Energy advanced sums to aid National Seminars in meeting its payroll. Berman Decl. at p. 4.

## DISCUSSION

First Energy moves to dismiss the involuntary petition in this case pursuant to Bankruptcy Rule 1011 and Rule 12(b) of the Federal Rules of Civil Procedure on the grounds that the three petitioning creditors are not holders of claims.

■ Section 303(b)(1) of the Bankruptcy Reform Act of 1978 ("Code") provides:

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1).

Under the statute, it is a jurisdictional imperative that each of the petitioning creditors be holders of claims that are not contingent as to liability.

A claim is defined under § 101(4) as: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created." *In re All Media Properties, Inc.,* 5 B.R. 126, 2 C.B.C.2d 449, 456, 6 B.C.D. 586 (Bkrtcy.S.D.Tex.), *affirmed* 646 F.2d 193 (5th Cir.1981); *accord In re Covey,* 650 F.2d 877, 4 C.B.C.2d 719, 7 B.C.D. 1069 (7th Cir.1981); *In re Tampa Chain Company, Inc.,* 35 B.R. 568

(Bkrtcy.S.D.N.Y.1983); *In re Turner*, 32 B.R. 244, 10 B.C.D. 1221 (Bkrtcy.D.Mass. 1983); *In re Dill*, 30 B.R. 546, 8 C.B.C.2d 1160, 10 B.C.D. 871 (Bkrtcy.App. 9th Cir. 1983).

Several principles become evident in reviewing 303(b)(1) in light of the preceding definitions. First, the word "claim" is defined in the broadest terms. Alternatively, it is only contingent claimants, as distinguished from all other categories of potential claimants, who are precluded from filing an involuntary petition (under § 303(b)(1)).

■ Consistent with this analysis, the court in *All Media* stated that "the intent of the Code is to allow the holders of any of the types of claims enumerated in 101(4)(A) to qualify as a creditor unless his claim is contingent as to liability." 5 B.R. at 131. "The Bankruptcy Code excludes as petitioning creditors only those creditors whose claims are 'contingent as to liability' ". *In re Gill Enterprises, Inc.*, 15 B.R. 328, 4 C.B.C.2d 1312 (Bkrtcy.D.N.J.1981). Nor does the fact that a claim is disputed, unmatured or unliquidated make such claim contingent as to liability. 5 B.R. at 133; *accord In re R.N. Salem Corporation*, 23 B.R. 452 (Bkrtcy.S.D.Ohio), *affirmed* 29 B.R. 424 (S.D.Ohio 1983); *In re North County Chrysler Plymouth*, 13 B.R. 393, 7 B.C.D. 1409 (W.D.Mo.1981).

In the instant case, the debtor concedes that each of the petitioning creditors' claims, if valid, would be noncontingent. However, it disputes that the petitioners hold claims of any sort. This position rests upon the unarticulated premise that although the Code definition of claim has been drafted in extremely broad terms, such definition may not confer the status of claimant upon a petitioning creditor who has no right to payment (or to an equitable remedy). Hence, First Energy moves to dismiss the involuntary petition.

Initially, a determination must be made as to which of the parties carries the burden of proof on this motion. Secondly, a determination must be made as to the nature of the burden.

■ First Energy's motion, although not specifically characterized as such, is a motion to dismiss on the grounds that the court does not have subject matter jurisdiction over the controversy. *See* 5 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (1982 Supp.). Alternatively stated, First Energy contends that a bankruptcy court is without jurisdiction to issue an order for relief in an involuntary case unless the petition is brought by holders of (noncontingent) claims. If the petitioning creditors do not hold claims, this court is precluded from exercising its jurisdiction.

In accord with the following analysis, First Energy's motion will be treated as a motion to dismiss, under Bankruptcy Rule 1011(b) and Rule 12(b)(1) of the Federal Rules of Civil Procedure, premised upon the court's lack of subject matter jurisdiction. *See In re Galanis*, 20 B.R. 590, 6 C.B.C.2d 932 (Bkrtcy.D.Conn.1982); *but see In re Longhorn 1979–II Drilling Program*, 32 B.R. 923, 10 B.C.D. 1435 (Bkrtcy. W.D.Okl.1983).

"The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction." 5 WRIGHT & MILLER, *supra* at § 1350. Consequently, the petitioners, as opposed to the movants, must demonstrate that they have appropriately invoked the jurisdiction of this court. *See Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

The Court of Appeals for the Second Circuit has also reached the conclusion that the burden of proof in this procedural context rests with the petitioning creditors, and has articulated the following test for guidance:

> In order to qualify a claim as a basis for seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment .... It is sufficient to establish ... that there are good grounds for the claim and that no defenses have been asserted in substantiable

form. Whether less may suffice we need not decide.

*In re B.D. Intern. Discount Corp.*, 701 F.2d 1071, 1077 (2d Cir.1983); *accord* 35 B.R. at 575.

There is obvious difficulty in attempting to operationalize the aforementioned test, however. By its own terms the standards it enunciates are flexible. It explicitly acknowledges that in alternative factual contexts the petitioning creditors may need to sustain a lesser burden. The fact that in *B.D. Intern.* the debtor did not offer a scintilla of proof in rebuttal of the petitioning creditor's claim, *see* 701 F.2d at 1074, distinguishes that case from the facts of the instant case. Additionally, in contradistinction to the facts of the case before this court, the debtor in *B.D. Intern.* had ceased operations prior to the commencement of the involuntary proceeding. Here, the debtor offers factual defenses to each of the claims of the petitioning creditors. Moreover, the debtor continues to do business and represents to this court that it continues to thrive.

In tailoring the *B.D. Intern.* test to the case *sub judice* two additional factors must be balanced. First, it has been determined that under prevailing authority holders of disputed claims are eligible to be involuntary petitioners. Notwithstanding this force of authority, Judge Friendly has commented in dictum that there is "difficulty in believing that ... a claim qualifies under 303(b) when the claim is subject to serious dispute." 701 F.2d at 1076.

While this court is inclined towards the position of Judge Friendly, it nevertheless finds itself constrained by the expansive grant of eligibility set forth in § 101(4) and § 303(b) to claimants seeking to commence an involuntary petition. While this dilemma would be resolved by defining the term "contingent" in such a way as to subsume "disputed" and perhaps "unmatured" as well, this court is reticent to take such a step in the absence of some basis, either in statute or legislative history.

In light of the liberal jurisdictional grant manifested in § 303(b), the court holds that under the facts of the case at bar that the creditors may defeat the debtor's motion to dismiss by demonstrating that there are good grounds for the claim and that no defenses have been raised which would defeat the claim as a matter of law. Under this test, as under the *B.D. Intern.* test, the Bankruptcy Court will not be required to dispositively resolve as collateral issues what could amount to a series of complicated factual and legal disputes between the debtor and its alleged creditors. Instead, the initial inquiry into the validity of a creditor's claim, in the words of Judge Sofaer, will be made to determine if there is "a substantial basis for the debt, ... even if it is not a definitive determination that the debt is owing." 701 F.2d at 1073–74.

ANALYSIS OF CLAIMS

After a review of the record, the court finds that each of the petitioning creditors has adduced facts which at this juncture are sufficient to establish that there are good grounds for its claim and that the debtor has not raised defenses sufficient to defeat the claim as a matter of law.

En-Con has asserted a claim for breach of contract against First Energy. First Energy has attempted to dissect En-Con's allegations to show that they lack internal consistency and therefore En-Con has failed to demonstrate "good grounds" for its claim. The attorneys for First Energy place substantial emphasis upon the admission of DeRaffale that En-Con's supplier, Vanguard Energy Conservation Products, Inc. ("Vanguard") unilaterally changed the terms of its contract with En-Con, by requiring additional advance sums of money from En-Con. First Energy contends that such conduct by Vanguard prevented En-Con from honoring the First Energy-En-Con contract. Memorandum of Law in Support of Motion to Dismiss ("Debtor's Memo") at p. 6. However, En-Con ably rebuts this argument in asserting that it would have been able to meet Vanguard's additional demands if First Energy's progress payments proceeded pursuant to contract. DeRaffale Decl. at p. 5.

The court nevertheless is troubled by what appears to be inconsistencies in the DeRaffale declaration of March 1, 1984 and the "Application" executed by DeRaffale on February 14, 1984 on behalf of En-Con in support of En-Con's application to this court to appoint an interim trustee.

Whereas the thrust of the March 1 declaration centers on the fact that First Energy did not make progress payments as they became due under the contract, and thus En-Con could not meet Vanguard's modified money demands, the application of February 14 states clearly that principals of En-Con went to Florida on December 31 to take title to 2500 units. En-Con Application of February 14, 1984 ("En-Con App.") at 4. Perhaps En-Con is able to present evidence in resolution of this apparent conflict that it received an influx of money between December 29, 1983, when En-Con "hand delivered [a] letter upon First Energy for payment of the balance so that EN–CON could conclude its transaction with Vanguard," DeRaffale Decl. at p. 5, and December 31, 1983. The court expects that the parties will address the apparent inconsistency in the papers at further stages in the proceeding, *see* § 303(i)(2) of the Code; *In re B.D. Intern. Discount Corp.*, 15 B.R. 755, 758, 5 C.B.C.2d 813, 8 B.C.D. 744 (Bkrtcy.S.D.N.Y.1981).

With respect to Energy Minder's claim for thirty-five thousand dollars, the dispute between the parties centers upon whether such sums were marketing advances made by Energy Minder with no expectation of repayment or constituted a loan requiring repayment. Marci Af. at p. 3; DeRaffale Decl. at p. 6. Energy Minder has demonstrated good grounds for its claim and no defenses have been raised which would defeat its claim as a matter of law. Accordingly, the court finds that Energy Minder meets the jurisdictional requirements set forth in § 303(b).

The claim of National Seminars arises from a) the alleged use by First Energy of MCI telephone services provided for and billed to National Seminars, and b) from an alleged contract for National Seminars to provide seminars and advertising to two sales agents, at the request of First Energy. At first perusal, the facts asserted by National Seminars constitute a sufficient basis for its claim. Moreover, First Energy does not raise a defense sufficient to vitiate the claim as a matter of law.

However, the affidavit of Lee E. Rosenberg dated March 5, 1984 ("Rosenberg Af.") casts substantial doubt on the bona fides of the National Seminars claim. In his affidavit Rosenberg asserts that as Executive Vice President of National Seminars he personally negotiated the contracts to provide the seminars for Arigo and Reitz. Rosenberg Af. at pp. 1–2. He further states that it was never in the contemplation of the parties for First Energy to be obligated for these debts. *Id.* Moreover, he disputes that National Seminars ever invoiced First Energy for the seminars on May 6, 1983, *Id.* at p. 3, as is represented to this court by Irwin Berman, Berman Decl. at p. 2. Finally, Rosenberg asserts that the amounts loaned and advanced as alleged by First Energy as a complete offset to National Seminars claims were in fact made to National Seminars. Rosenberg Af. at pp. 4–5.

The representations of Rosenberg, if accepted by the court, would be sufficient to demonstrate that National Seminars is without good grounds for its claim. However, the court notes that Rosenberg is currently employed by First Energy and is an interested party.

In light of the factual disparity between the Rosenberg affidavit and Berman declaration, the court finds that National Seminars has met the burden enunciated by this court that there are good grounds for its claim and that no defenses have been raised to defeat its claim as a matter of law.

First Energy has argued in connection with the Energy Minder and National Seminars claims, that these creditors have failed to make demand for payment on their claims and thus cannot be considered as claimants under the requirements set forth in §§ 303(b) and 101(4) of the Code.

This position is summarily refuted by reference to the cited sections. Among the categories of claims established under § 101(4) is that of "unmatured" claims. An unmatured claim is one in which the right to payment has not yet accrued. If under § 303(b) it is only contingent claimants who are precluded from commencing an involuntary proceeding, it follows that unmatured claimants are not so barred. If a claimant whose right to seek recovery has not yet accrued may commence an involuntary case, so too may a claimant whose right has accrued but has not yet made demand for payment.

CONCLUSION

Based upon the preceding factual findings and conclusions of law, the debtor's motion to dismiss is denied and a trial is set down for April 5, 1984. The parties are expected to give evidence at such time bearing upon the issue of whether the debtor is generally paying its debts as they become due. In addition, the court grants to the parties leave to introduce evidence bearing on the question of the validity of the petitioners' claims, to the extent that such evidence is germane to the trial under 303(h)(1) as to whether debtor has been generally paying its debts.

The court does not minimize the significance of the fact that at least one, and possibly two of the petitioning creditors have chosen an involuntary petition as the vehicle to first assert their claims against debtor. Nor is the court unmindful that there exists a significant interrelatedness between the petitioning creditors, and that Energy Minder and National Seminars have been substantially motivated to join as petitioning creditors on account of their relationship with En-Con. Clearly, there are less drastic mechanisms through which their disputed claims can be processed.

Nonetheless, § 303(b) of the Code constitutes a liberal grant to claimants to bring before the court in an expedited manner the issue of the debtor's solvency. The broad language of § 303(b), however, does not dictate that § 303(h), which articulates the standard for granting an order for relief, should be similarly construed in broad terms. The court reminds the litigants of the severity of the remedy sought in the instant case.

Under 303(h)(1), the petitioning creditors must demonstrate that the debtor is "generally not paying such debtor's debts as such debts become due." Without offering a definitive statement as to the requisite type and quantum of proof necessary to satisfy this burden, the court makes the following comments.

The papers make clear that Energy Minder has not made prior demand upon the debtor for payment of its claim. Marci Affidavit of March 5, 1984 ("Af. II") at p. 3. There is substantial doubt as to whether National Seminars has made a demand for payment, as well. *Id.* at 2. While the court will defer consideration until trial, it is predisposed to find that no demand for payment has been made by these claimants and thus, their claims should not be included in the "generally paying" debts analysis under 303(h)(1). (A debt is not due until a debtor is apprised that he has a current obligation to make payment.)

Moreover, on the current state of the record, the court finds that there exists a genuine dispute between the parties as to these claims. While the court will suspend its holding until trial, it is persuaded by that body of case law which holds that a bona fide dispute as to the existence of a claim dictates that such claim not be computed in a determination of whether the debtor is generally payings its debts. *In re Arlumsa Development Corp.,* 33 B.R. 981 (Bkrtcy.S.D.N.Y.1983); *In re Goldsmith,* 30 B.R. 956 (Bkrtcy.E.D.N.Y.1983); *In re Karber,* 25 B.R. 9 (Bkrtcy.N.D.Tex. 1982); *In re Blaine Richards & Co., Inc.,* 16 B.R. 362 (Bkrtcy.E.D.N.Y.1982); *In re Reed,* 11 B.R. 755, 4 C.B.C.2d 934 (Bkrtcy. S.D.W.Va.1981); *see* 701 F.2d at 1076; *but see In re Covey,* 650 F.2d 877 (7th Cir. 1981).

Likewise, the papers disclose that the En-Con claim is disputed on several factual bases and therefore the foregoing analysis pertains to such claim as well.

Finally, the court refers the petitioning creditors to § 303(i) which authorizes the court, in its discretion, to grant judgment against them for attorney's fees and costs, and upon the requisite finding, damages including punitive damages. In light of the relaxed standards which govern the commencement of an involuntary proceeding, it is incumbent upon this court to give substantial consideration to requests made by the debtors for payments under this section.

It is SO ORDERED.