773 F.2d 945
 13 Collier Bankr.Cas.2d 781, 13 Bankr.Ct.Dec. 986,
Bankr. L. Rep. P 70,786
 In re Zadock REID, Debtor-Appellant,
Dale R. Schmid, D.D.S., Ralph F. Schmid, Katherine G.
Dengler, Michael Overfield, Petitioning Creditors-Appellees,
and
Nathan Yorke, Interim Trustee-Appellee.
 No. 84-2343.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 7, 1985.
Decided Oct. 1, 1985.
As Amended Oct. 3, 1985.
 
 Arthur T. Susman, Judith N. Kolman, Joseph, Susman & Myers, Chicago, Ill., for debtor-appellant.
 Harry S. Miller, Chicago, Ill., for petitioning creditors-appellees.
 Nicholas Dozoryst, II, Chicago, Ill., for interim trustee-appellee.
 Before WOOD, CUDAHY and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 This case involves an appeal by a debtor from the district court's grant of an emergency application for the appointment of an interim trustee to take possession of the debtor's personal assets for the benefit of creditors. The main issue presented is whether the district court properly granted the creditor's application for the appointment of an interim trustee pursuant to 11 U.S.C. Sec. 303(g) (1982). We reverse and remand.
 
 I.
 
 2
 On June 29, 1984, the petitioning creditors-appellees, Dale R. Schmid, D.D.S., Ralph F. Schmid, Katherine G. Dengler, and Michael Overfield (the "creditors") filed an involuntary petition against Zaddock & Co., Inc. ("Zaddock"). On July 2, 1984, the district court appointed an interim trustee, Nathan Yorke ("Yorke"), to manage the company's business. One week later, the interim trustee held a hearing at which the president and principal shareholder of Zaddock, Zadock, J.B.W. Reid ("Reid"), was examined. Except for questions as to his name and legal residence, Reid declined to answer all of the questions posed by counsel for the interim trustee, claiming his constitutional right against self-incrimination.
 
 
 3
 On July 13, 1984, the same creditors filed another involuntary petition against Reid individually, alleging that the creditors had claims in excess of $5,000 that were not contingent as to liability and that arose out of several demand notes. The creditors further alleged upon information and belief that Reid had commingled his assets with those of Zaddock.
 
 
 4
 On July 17, 1984, the creditors filed an emergency application for the appointment of an interim trustee against Reid. The creditors claimed that the court had to appoint an interim trustee in order to preserve the property of Reid's estate or to prevent loss to the estate pursuant to 11 U.S.C. Sec. 303(g) (1982). Specifically, the creditors alleged that Reid may have been transferring certain of Zaddock's assets to foreign jurisdictions, that the interim trustee appointed to manage Zaddock believed that Reid had commingled his assets with those of Zaddock, and that Reid had implied that substantial assets of Zaddock were in Jamaican banks. After a review of the evidence presented at a hearing on the creditors' application, the district court concluded that Reid totally controlled and directed Zaddock and that he had commingled his individual funds with those of the corporation. The court appointed Yorke as an interim trustee and set bond at $10,000.
 
 
 5
 On appeal, Reid challenges the appointment of the interim trustee, claiming that: (1) the creditors did not have standing to file the involuntary petition, (2) the creditors did not sustain their burden of proving that an interim trustee was imperative for the preservation of Reid's estate, (3) the creditors did not establish that Reid had commingled his assets with those of Zaddock, and (4) the $10,000 bond set by the district court was insufficient to indemnify Reid against possible loss to his property.
 
 II.
 
 6
 Reid's first argument to this court is that the petitioning creditors did not have standing to file the involuntary petition in bankruptcy against the debtor because they did not meet the Bankruptcy Code's requirements for a creditor entitled to commence such a petition. We will proceed to scrutinize carefully the creditors' filing of the involuntary petition in this case because the courts have held that the filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment. See, e.g., In re First Energy Leasing Corp., 38 B.R. 577, 585 (Bankr.E.D.N.Y.1984); In re McMeekin, 18 B.R. 177, 177-78 (Bankr.D.Mass.1982). Since we agree with Reid that the creditors did not have standing to bring the involuntary petition, we must reverse the district court's appointment of the interim trustee.
 
 
 7
 Section 303(b)(1) of the Bankruptcy Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, provides that an involuntary case may be commenced against a debtor by three or more creditors, "each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute...." 11 U.S.C.A. Sec. 303(b)(1) (West Supp.1985).[1] Prior to this amendment, a creditor only had to meet the requirement that his claim not be contingent as to liability in order to file an involuntary petition. 11 U.S.C. Sec. 303(b)(1) (1982). The 1984 amendment to section 303(b)(1), which added the requirement that the creditors' claims not be the subject of a bona fide dispute became effective on July 10, 1984. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 553(b), 98 Stat. 392 (1984). Since the involuntary petition in the present case was filed on July 13, 1984, three days after the amendment to section 303(b)(1) had taken effect, the creditors were required to show that their claims were not contingent as to liability or the subject of a bona fide dispute.
 
 
 8
 In the present case, we find that the creditors' claims are "the subject of a bona fide dispute."[2] Before the 1984 amendment to section 303(b)(1) added the requirement that a creditor's claim not be the subject of a bona fide dispute, there were numerous cases holding that a creditor did have standing to bring an involuntary petition even if his claim was disputed. See, e.g., In the Matter of Covey, 650 F.2d 877, 881-82 (7th Cir.1981); In re Dill, 30 B.R. 546, 549 (Bankr. 9th Cir.1983), aff'd, 731 F.2d 629, 631 (9th Cir.1984); In re Marshall, 37 B.R. 108, 110 (Bankr.S.D.Fla.1984); In re Longhorn 1979-II Drilling Program, 32 B.R. 923, 926 (Bankr.W.D.Okla.1983). Several courts however, expressed doubt that Congress really intended for a creditor to be able to bring a claim under section 303(b)(1) when that claim was subject to serious dispute. See, e.g., In re B.D. International Discount Corp., 701 F.2d 1071, 1076 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983); In re First Energy Leasing, 38 B.R. at 582. In In re First Energy Leasing, the bankruptcy court explained that it felt constrained by the expansive grant of eligibility in section 303(b)(1) to allow a creditor to file an involuntary petition even if the claim was disputed. 38 B.R. at 582. However, the court noted that the dilemma in which it found itself could be resolved if Congress would define the term "contingent" in such a way so as to subsume "disputed" claims. Id. The court concluded that it was reticent to take such a step in the absence of some basis in either the statute or its legislative history. Id. See also 2 King, Collier on Bankruptcy p 303.08[b], at 303-33, 303-36 (15th ed. 1984) (the 1984 amendment to section 303(b)(1) holding that creditors with claims in "bona fide dispute" cannot file an involuntary petition changes reasoning and result of a significant number of cases dealing with disputed claims).
 
 
 9
 Since Congress amended section 303(b)(1) in 1984, a creditor cannot bring a claim that is subject to a bona fide dispute. In the present case, we hold that the creditors' claims that Reid was commingling his assets with those of Zaddock were the subject of a bona fide dispute. Throughout all of the proceedings, Reid has not admitted his liability as to any of the creditors' claims nor has he ever executed any guaranty or document rendering him personally liable for the company's debts. Although the creditors, at the hearing held before the district court to determine whether the court should appoint an interim trustee, produced evidence that checks from Zaddock's corporate account were issued to Reid, this evidence does not support the conclusion that Reid commingled his assets with those of Zaddock, especially when these checks could have been compensation for Reid's services to the corporation or merely loans to Reid. We conclude that the creditors' allegations that Reid commingled his assets with those of Zaddock and that Reid is personally liable for the company's debts are claims subject to a bona fide dispute,[3] and thus that the creditors did not have standing to bring their involuntary petition.
 
 
 10
 In conclusion, we reverse the district court's grant of the creditors' involuntary petition for the appointment of an interim trustee and remand the case to the district court for further proceedings consistent with this opinion.
 
 CUDAHY, Circuit Judge, concurring:
 
 11
 I agree that the petitioning creditors have not established the absence of a bona fide dispute with respect to their claims against Zadock Reid. I would therefore expressly authorize the district court on remand to conduct further evidentiary proceedings to determine whether the dispute as to Reid's liability is bona fide.
 
 
 12
 HARLINGTON WOOD, Jr., Circuit Judge, dissenting.
 
 
 13
 Not being prepared to depart from Chief Judge McGarr's legal and practical view of this case, I must respectfully dissent.
 
 
 14
 The petitioning creditors filed an emergency application for the appointment of an interim trustee on the basis that Reid had commingled his personal assets with those of Zaddock Co., Inc., the subject of a related bankruptcy. After an evidentiary hearing Judge McGarr determined that those allegations were correct and that the corporate veil, a very transparent one, should be pierced. Reid, it was found, totally controlled the corporations and had used the corporate assets as his own. Judge McGarr, in coming to this conclusion, received no help from Reid as Reid declined to testify on the grounds that he might incriminate himself.
 
 
 15
 The interim trustee appointed in the Zaddock bankruptcy did testify. He told of his unavailing search for original corporate books and records. Nevertheless he was able to determine that there was corporate indebtedness of about $5,000,000, much of which was due and owing these petitioning creditors. The interim trustee also determined that during one period of time Reid had used about $45,000 of corporate funds for his and his wife's personal and family expenses. In addition, based on information from two persons formerly associated with the corporation, the interim trustee had reason to believe that there were three banks in Jamaica in which Reid had personal accounts but which contained corporate funds. This confirmed the petitioners' allegation, based on what Reid himself had previously indicated, that there were substantial corporate funds in Jamaica. There is no need, however, for our present purposes to reexamine all the evidence in detail. The evidence is sufficient, in my judgment, to fully support Judge McGarr's findings and actions, the seriousness of which he fully understood. Judge McGarr appointed Nathan York, interim trustee in the corporate bankruptcy, as interim trustee of Reid's personal estate because of his already existing knowledge of the circumstances. If it turns out that an interim trustee is unnecessary the trusteeship can be terminated.
 
 
 16
 The majority holds that the allegations of commingling which would make Reid personally liable for the unpaid corporate notes, are claims subject to a bona fide dispute and therefore under Section 303(b)(1) cannot constitute a basis for involuntary bankruptcy. The mere fact that Reid does not admit raiding the corporation does not make it a bona fide or legitimate dispute. Judge McGarr resolved any doubt there may have been by finding that the petitioners' allegations were in fact true and fully justified appointing an interim trustee.
 
 
 17
 Under the bona fide dispute rule as viewed and applied by the majority these hapless creditors will have standing when that standing may likely be worthless. Judge McGarr is being told not to shut the barn door until it is absolutely certain that the horse is already gone. The evidence strongly suggests that in the meantime any personal or corporate assets that Reid may still have may become conveniently out of his creditors' reach in sunny Jamaica, but not out of his.[1]
 
 
 
 [1]
 Section 101(4)(A) of the Bankruptcy Act of 1978 defines a "claim" as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. Sec. 101(4)(A) (1982)
 
 
 [2]
 Reid argues that the creditors' claims, which are based on Reid's personal liability as an alter ego of the corporate debtor, Zaddock, are contingent as to liability since Reid's liability for the company's debts could only arise upon the occurrence of an extrinsic event--a finding of personal liability by a competent judicial tribunal. See In re Turner, 32 B.R. 244, 247-48 (Bankr.D.Mass.1983). We note that the cases appear to be in conflict as to whether a creditor, whose right to payment depends on the obtaining of a judgment, is qualified to file an involuntary petition. Compare In re Turner, 32 B.R. at 247-48 (holding such claims to be contingent); In re All Media Properties, Inc., 5 B.R. 126, 133 (Bankr.S.D.Tex.1980) (same), aff'd, 646 F.2d 193 (5th Cir.1981) with In re Longhorn 1979-II Drilling Program, 32 B.R. 923, 927-29 (Bankr.W.D.Okla.1983) (holding such claims to be noncontingent); In re Dill, 30 B.R. 546, 549 (Bankr. 9th Cir.1983) (same), aff'd, 731 F.2d 629 (9th Cir.1984). However, we need not decide whether the creditors' claims in the present case are contingent as to liability because we find that they are the subject of a bona fide dispute
 
 
 [3]
 We note that there has not yet been a judicial determination that the corporate veil should be pierced, thereby rendering Reid personally liable for the company's debts. As the creditors acknowledged in their brief before this court, the district court's decision to appoint an interim trustee based on the evidence submitted by the creditors was only a preliminary factual determination and was not an adjudication on the merits of the dispute
 
 
 [1]
 Although the question of our jurisdiction over this appeal was not raised by the parties I have some reservations about it. Appellant suggests our jurisdiction is under 28 U.S.C. Sec. 1292(a)(2) which confers jurisdiction to the courts of appeals over interlocutory orders "appointing receivers." Here we are asked to review the appointment of an interim bankruptcy trustee. Our research reveals that at least two panels of this court have stated in dicta that section 1292(a)(2)'s reference to "receivers" is a reference to equity receivers only and therefore does not include bankruptcy trustees. See Cash Currency Exchange, Inc. v. Shine, 762 F.2d 542 (1985); In re Licek Potato Chip Co., 599 F.2d 181, 184 n. 4 (7th Cir.1979); accord 2 COLLIER ON BANKRUPTCY para. 24.27[2.1] at 762.1 n. 7 (14th ed. 1978); 7B MOORE'S FEDERAL PRACTICE para. 1292(a)(2) (2d ed. 1985); 7-Pt. 2 MOORE'S FEDERAL PRACTICE para. 66.02 (2d ed. 1985). Accordingly this appeal of the appointment of an interim trustee is an interlocutory appeal that may not come under the section 1292(a)(2) exception to the finality rule as suggested. However, we may have jurisdiction under the collateral order doctrine, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under the circumstances, I will consider we do have appellate jurisdiction